In the Matter of EDWARD A. SIPPELL et al., Petitioners, against BERNARD J. DOWD, as Mayor of the City of Buffalo, et al., Respondents.

Supreme Court, Special Term, Erie County, February 2, 1948.

*Charles J. McDonough* for petitioners.

*Fred C. Maloney, Corporation Counsel (Gerald J. Shields* of counsel), for respondents.

HAGERTY, J. This application under article 78 of the Civil Practice Act was made by ten named petitioners, competitive civil service employees of the City of Buffalo, on behalf of themselves and all others similarly situated (an estimated 400 to 500). They seek an order directing the Mayor, the common council and the civil service commission of the city of Buffalo

to take appropriate action to restore to them alleged vested rights in regard to promotion and seniority of which, the petitioners claim, they were deprived by action of the respondents.

From the petition, the answer, the reply of the petitioners, the supplemental answer and the briefs and arguments of counsel, together with exhibits attached to the papers, it appears that in 1939, by action of the then common council and Mayor, the report of a special committee dealing with job classification and a proposed salary and wage schedule was adopted and ordinances of the City of Buffalo were amended to carry out the special committee's findings and recommendations and the civil service commission acted to conform its rules applicable thereto.

The special committee's report admitted that the task it had undertaken had not been completed. (There were 6,000 competitive civil service employees.)

In 1942, some 1,800 unclassified employees of the City of Buffalo who were not in the competitive civil service class, such as laborers, were frozen into civil service by action of the then Mayor and common council.

In 1945, the then Mayor and common council by duly amending the ordinances, granted all the employees of the City of Buffalo a flat increase in compensation of $350 per annum to meet the increased cost of living. This was put into effect by adjusting the minimum and maximum ranges of salaries and wages.

In the early part of 1947, the task of completing the classifying and grading of competitive civil service employees, of adjusting many inequalities among the city's employees in respect to salaries and duties performed and of grading and slotting the jobs or positions which had not already been graded or slotted was resumed.

In June, 1947, by action of the then Mayor and common council amending the ordinances of the City of Buffalo and the civil service commission by amending a certain one of its rules, all effective July 1, 1947, many more jobs and positions in the civil service in Buffalo were classified, graded and slotted.

Subsequently, and before this proceeding was instituted, the municipal division of the Civil Service Department of the State of New York was called upon to examine what had been accomplished by the action of the then Mayor, common council and civil service commission in June, 1947, the ultimate objective being to secure the approval of the State Civil Service Department. State department experts came to Buffalo to conduct an investigation. They held conferences with public officials,

the employees who had been affected by the action of June, 1947, and distributed among the employees questionnaires in which, among other things, the employees outlined the duties which they performed in their respective capacities as employees of the City of Buffalo.

The report of the State Department of Civil Service containing its findings and recommendations was submitted to the civil service commission of the city of Buffalo early in December, 1947. By action of the then Mayor and common council of the city of Buffalo, section 1 of chapter 1 of the ordinances of the city of Buffalo was again amended to make effective as of January 1, 1948, the classifying and grading of all the civil service employees of the City of Buffalo except members of the police and fire departments, pursuant to the recommendations of the Civil Service Department of the State of New York acting in co-operation with the civil service commission of the city of Buffalo.

Without objection the petition and all other papers were amended to make this application applicable to this last mentioned amendment of the city ordinances effective January 1, 1948.

No action taken by the mayors and the common council from 1939 to date reduced the salary of any employee.

The amendment of section 1 of chapter 1 of the ordinances effective July 1, 1947, increased the salaries of some city employees and left unchanged the salaries of other city employees affected by the amendment.

The amendment of section 1 of chapter 1 of the city ordinances effective January 1, 1948, increased the salaries of some other city employees and left unchanged the salaries of all others.

This proceeding was instituted by the service of the petition on the respondents on October 31, 1947. The respondents contend that this proceeding is barred by the Statute of Limitations under the provisions of section 1286 of the Civil Practice Act which provides that a proceeding of this kind must be instituted within four months after the determination to be reviewed becomes final and binding. In the opinion of this court, the Statute of Limitations did not start to run until July 1, 1947, and, therefore, this proceeding was instituted in time (*Matter of Balacek* v. *Board of Trustees*, 26 N. Y. S. 2d 419, 424, revd. on other grounds 263 App. Div. 712, affd. 288 N. Y. 640).

The respondents claim that the ten named petitioners cannot sue as representatives of all others similarly situated. The petitioners rely upon section 195 of the Civil Practice Act

which provides: "*Suing for benefit of others.* Where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

In the opinion of this court the ten named petitioners could sue as representatives of all others similarly situated (*Kovarsky v. Brooklyn Union Gas Co.,* 279 N. Y. 304; *Matter of Russell* v. *Buck,* 294 N. Y. 50; 30 Mich. L. Rev. 878; *Matter of O'Callaghan* v. *Finegan,* 276 N. Y. 587; *Matter of Friedman* v. *Kern,* 258 App. Div. 1037).

It appears that by amending section 1 of chapter 1 of the ordinances of the city of Buffalo effective January 1, 1948, five of the petitioners, to wit, Howard M. Evarts, Clara R. Oberbuescher, Byron Earl, Edna M. Walker and Joseph C. Miller were classified in such a manner that the granting of the relief which they sought would be academic and therefore the petition, insofar as it applies to them, should be dismissed on that ground.

It seems to this court that one of the inescapable conclusions that comes from a study of the record made in this proceeding is that beginning in 1939, and up to date the efforts of the public bodies and public officials having to do with the classification of the jobs and positions in the civil service of the City of Buffalo have been directed at setting a pattern which would bring order out of chaos by eliminating inequalities, by securing more adequate compensation for duties performed by incumbents, by preventing favoritism, by giving opportunity for promotion and by grading or slotting employees according to the duties they performed. It is important to note that no complaint has been raised during the pendency of this proceeding questioning the good faith of these public bodies and public officials.

It seems to this court that the only way intelligent and fair conclusions can be reached concerning the status of these petitioners is to keep in mind that the actions of these public bodies and public officials have not been applicable alone to them but to all of the employees in the civil service of the City of Buffalo. In other words, their combined acts amount to a general and modern reformation of the classification of jobs and positions in the civil service of the City of Buffalo. By virtue of these acts, none of the incumbents, including the named petitioners, had their salaries reduced; some of them had their salaries raised; none was relegated to the performance of duties less responsible than the duties they performed before.

Nevertheless, it is the claim of the petitioners that they and the others similarly situated were demoted because they were graded and slotted backwards and thereby were deprived of certain alleged promotional rights and seniority rights both with respect to promotion and suspension.

To get to specific cases, three of the named petitioners, to wit, Edward A. Sippell, J. Walter Walsh and Adam G. Kuhn, prior to July 1, 1947, were tellers in the department of the treasury and their respective salaries were $3,410 per annum. Their grade or slot had not been established by letter, but according to the salaries they received they considered themselves in I grade. After July 1, 1947, they were in G grade. Although the respondents describe their salaries as " preferential " they remained the same. After January 1, 1948, Kuhn was in F grade. His salary is the same though.

By being put back in grade these petitioners claim they have been deprived of rights in regard to promotion and seniority which they contend were vested in them by reason of the grade which they say was their rightful status before.

The respondents claim they never really were graded before by having a letter assigned to them, that when they admitted in their answer that these petitioners were in I grade they only meant that that was so from a consideration of their salaries alone; that nobody has been promoted over the petitioners in the treasury department; that there are no jobs or positions in the treasury department to which they could aspire by promotion; that when the petitioners vacate their positions their successors must accept the salary ranges established by the grades or slots assigned to these positions as a result of a study of the duties performed by the incumbents of these positions and these salary ranges are considerably below the so-called preferential salaries of the present incumbents, and that their seniority rights remain the same as ever as far as they are concerned in respect to suspension and have not been abridged insofar as promotion is concerned because there are no positions in the treasury department to which they can aspire by way of promotion.

Louis J. Schuster was city sealer, bureau of weights and measures, executive department, before July 1, 1947, and his salary was $3,950. The respondents claim he was assigned no letter to indicate grade or slot before that date. Now his grade letter is G. His salary is the same as before. When he vacates his position his successor's salary will have a maximum of $3,450. The respondents claim that he is now the highest paid competitive class employee in the bureau of weights and meas-

ures and that there being no competitive class position in the bureau of weights and measures to which he can aspire by way of promotion, either now or before July 1, 1947, he was not deprived of any rights. The respondents contend that Schuster's claim that he was in I grade before July 1, 1947, was his own assumption apparently based on the amount of his salary.

Elmer J. Belzer, water inspector, division of water, received a salary of $2,570 before July 1, 1947, and is receiving the same now. The respondents contend that when Belzer claims he was in F grade before July 1, 1947, he assumed so because of the amount of his salary but that as a matter of fact no letter indicative of grade had been assigned to him. He has been assigned to D grade. This means his successor in that grade will receive a minimum salary of $2,200 and a maximum of $2,400. In D grade, the respondents claim Belzer will be eligible for promotion to two higher grade positions. This is uncontradicted.

Undoubtedly seniority rights must be recognized according to the time served performing the kind of duties assigned to a grade regardless of whether it was correctly or incorrectly lettered or not lettered at all, and, if at the time of a promotion proper credit is not given, then the aggrieved party may seek his remedy.

If the petitioners and others similarly situated were to be restored to the grades in which they claimed they belonged, this action would put them in grades which now have minimum and maximum salary ranges considerably higher than the salary ranges of the grades into which they have been slotted. For instance, take the cases of Sippell, Walsh and Kuhn, tellers in the treasury department. Although they had not been assigned letters indicative of their grades prior to July 1, 1947, they claim that because of the amount of their salaries (each received $3,410 per annum) they were in I grade. The respondents contend that their salaries were and still are now, preferential. If Sippell, Walsh and Kuhn were at present slotted in I grade, they would be in a grade whose minimum and maximum ranges are now $3,850 to $4,050.

Courts cannot encroach on the field of duty of public officials who are charged with responsibility of fixing salaries for civil service employees. This is conceded (*Brandt* v. *City of New York*, 172 Misc. 988, affd. 260 App. Div. 911).

The petitioners claim that the Mayor and common council exceeded their authority on June 24, 1947, by amending the standard salary and wage schedule of 1939, as amended in 1945,

thereby establishing new and different salaries for the various grades and that the civil service commission illegally exercised its authority by amending its subdivision 20 of rule 20, conforming it to the grades and salaries established by the action of the Mayor and common council of June 24, 1947, effective July 1, 1947.

While the civil service commission has exclusive jurisdiction to classify and grade competitive civil service positions, it may perform its duties in that regard in co-operation with other public bodies and officials so long as its determinations and actions are within the limits fixed by the pertinent laws, rules and regulations.

The classification of competitive civil service employees accomplished by the adoption, in 1939, of the standard salary and wage schedule was not the subject of attack in regard to those employees who were then classified.

Under section 11 of the Civil Service Law of the State of New York municipal civil service commissions seem to have broad discretion in classifying and reclassifying positions in the civil service and unless their acts in this respect are illegal, capricious or arbitrary, they will not be disturbed by the courts (*Matter of Buckley* v. *Conway,* 270 App. Div. 1066).

As the court said in *Matter of Kornbluth* v. *Reavy* (261 App. Div. 60, 63):

"We may not say that respondents and the Governor violated any law in making the classification which they did. We are not warranted in substituting our judgment in place of the body authorized to make the determination. The Commission and the Governor exercised their discretion and unless their decision is illegal, discriminatory, arbitrary or capricious, we may not interfere.

"In effect, appellant's argument is that the old rule should have been continued for his benefit. In this he is mistaken."

There being no showing in this proceeding that the Mayor and common council exceeded their authority or that the actions of the civil service commission were illegal, capricious, arbitrary or discriminatory, the petition must be dismissed.

It is so ordered.