Froessel, J.
These are cross appeals on certified questions. Petitioner brings this article 78 proceeding in his capacity as a citizen, alleging that the reclassification without competí *58 tive examination of some 46 former grade 4 attorneys in the office of the Corporation Counsel of New York City constitutes an illegal promotion (N. Y. Const., art. V, § 6). Petitioner is employed in the same office, having been originally appointed tax counsel, grade 4. In the reclassification he and some 90 other former grade 4 attorneys in the office were given the new title of “attorney”, while those persons whose assignments he seeks to nullify were given one of the three titles higher than that of “attorney”, namely, senior attorney, supervising attorney, and principal attorney.
The administrative action which petitioner challenges is part of a city-wide reclassification of some 125,000 positions. The reclassification had its origin in 1950 when Mayor O’Dwyer, on the recommendation of the Bureau of the Budget and various civic groups, named a committee on management survey to study the entire city civil service structure. A firm of public administration and finance consultants was engaged to survey 59 city agencies and 11 cultural institutions, and to suggest a comprehensive plan of job classification, including salary schedules. Its survey covered some 86,000 positions.
In 1953, after holding numerous hearings and conferences looking toward the creation of a “career and salary plan”, the Mayor’s committee reported: “ The existing titles and classes used by the City have evolved without systematic plan over the past decades and leave a great deal to be desired. Identical titles have totally different meanings in the several departments and similar work is paid for at different rates.” In proposing reclassification of the city civil service, the committee recommended the use of “equivalencies ”, whereby each existing title would be correlated with a title in the new classification.
In 1954, the Legislature, at the request of Mayor Wagner, enacted a law amending the New York City Charter by creating a City Civil Service Commission (hereinafter called the Commission) in place of the old Municipal Civil Service Commission (L. 1954, ch. 354; New York City Charter, §§ 811-819). It also created a Department of Personnel, of which the Commission would be a part, with .a personnel director to serve as chairman of the Commission, who was given broad powers including the power to make studies and recommendations with regard *59 to grading and classifying civil service positions. In approving the law, Governor Dewey stated, among other things, that it represents “ a major improvement over present procedures ” (McKinney’s 1954 Session Laws of N. Y., pp. 1389-1390).
Thereafter the Board of Estimate, pursuant to its powers under the New York City Charter (§§ 67, 68), approved the establishment of a career and salary plan, and adopted a general pay plan to provide “ fair and comparable pay for comparable work, and regular increases in pay in proper proportion to increase of ability as demonstrated in service ”. The board resolved that the salary of positions subject to the plan should not be reduced for the then permanent incumbents nor should their rights or status be in any way impaired.
The Commission, with the approval of the State Civil Service Commission, provided in a companion resolution that each position or class of positions subject to the career and salary plan “ shall be classified under a standard title and allocated to an appropriate salary grade as soon as practicable following the adoption of this rule, and, upon such position classification and salary grade allocation, the Personnel Director shall establish schedules of equivalent titles indicating in each ease the former title of each position and the standard title and salary grade to which such position is classified and allocated.” The resolution stated that the rights of permanent incumbents should not be impaired, and that those entitled to an unlimited salary grade prior to reclassification (e.g., persons in grade 4) would not be subject to a maximum salary, even if placed in new positions with such a maximum. The resolutions provided for classification appeals boards to hear all protests and appeals on salary allocations and reallocations and on position classification and reclassification.
After a series of hearings and discussions concerning new grades, titles and salaries with some 130 employee groups, with every department head, and professional and civic organizations, Personnel Director Schechter submitted to the Board of Estimate his proposals for the reclassification and salary grade reallocation of, among others, the legal positions in the competitive class of the city service.
He recommended the following table of equivalencies: law assistants, grade 2, were to become junior attorneys; the vari *60 ous legal positions in grade 3 were to be given the title of assistant attorney; and all attorneys in grade 4, the highest competitive grade in the legal service, unlimited as to salary, were to be assigned to the new ranks and grades of attorney, senior attorney, supervising attorney and principal attorney. These new titles carried progressively higher minimum and maximum salaries and differing degrees of responsibility as illustrated in the description of duties attached to the personnel director’s report. As with all other positions to which the career and salary plan applied, annual salary increments were provided.
Before reclassification there were some 137* grade 4 attorneys in the Corporation Counsel’s office, performing functions of varying importance and receiving salaries ranging from the minimum of $4,876 ($6,345 for tax counsel) to $14,000. Because this was an unlimited salary grade, employees in grade 4 had been assigned different salaries as well as different degrees of responsibility, without requiring promotional examinations.
The Commission adopted the personnel director’s recommendations and declared that all persons permanently employed in the then present legal classes were “ eligible for reclassification, without further examination, as indicated in the table of equivalencies ”. Its action was approved by the Mayor and by the State Civil Service Commission. Since exact equivalencies could not be set up with regard to persons formerly in grade 4 (and the other some 15,000 persons in unlimited salary grades), an on-the-job survey was made. Pending its completion, petitioner and all other attorneys in former grade 4 were assigned on April 17, 1956 to the position of ‘1 attorney ”, subject to more specific classification as a result of the survey.
The survey, to determine actual duties and responsibilities of incumbents, consisted of questionnaires filled out by each incumbent and verified by his immediate superior, and “ desk audits ’ ’ or personal interviews. Changes in titles were said to be in conformity with the work actually done prior to reclassification. Upon completion of the on-the-job survey, the former grade 4 attorneys in the Corporation Counsel’s office were, on -July 15, 1956, reclassified as follows: 9 were given *61 the title of principal attorney with a salary range from $11,200 to $13,600; 13 were given the title of supervising attorney with a salary range from $10,300 to $12,700, and 24 were given the title of senior attorney with a salary range from $9,000 to $11,100. The rest, including petitioner, were assigned the title of attorney with a salary range from $7,100 to $8,900. Inasmuch as the salary for former grade 4 was unlimited, no one by this reclassification received a salary beyond that fixed for said grade 4 (Civil Service Law, § 16, subd. 7).
Several weeks thereafter, petitioner instituted this proceeding. It is clear from a reading of the petition, reply and reply affidavits that petitioner’s complaint is not directed towards the career and salary plan as such—indeed he states he is seeking to “ save ” the plan—nor towards the creation of different titles and higher salaries for employees in the legal service, nor towards the use of equivalencies. The substance of his claim, as indicated by the language of his reply and reply affidavit, is that-a “few chosen persons ” in the Corporation Counsel’s office were given “unjustifiable preferment ” on the basis of “personal influence and favor”. In other words, the essence of his petition is an attack not upon the plan of reclassification itself but upon the way it was administered with regard to his particular department.
Petitioner urges that the duties of tax counsel were lower in importance and responsibility than those of principal attorney, supervising attorney and senior attorney, and, therefore, a promotion was involved. His conclusion, like that of Special Term, is based upon a mere comparison of the duties described in one of the recent notices of examination for tax counsel with those included in the “illustrative ” basic class descriptions of the other three titles. There is no support whatever for the claim that, for purposes of reclassification, such job descriptions are controlling. If petitioner’s argument were carried to its logical extreme, he would have to take an examination himself in order to be assigned as attorney and collect the corresponding increase in salary, since the duties described for that position, including the authority to supervise others, are on their face undeniably higher in character than the announced duties of tax counsel.
*62 The eases cited on this issue by petitioner— (Matter of Flannery v. Joseph, 300 N. Y. 149; Matter of Dinan v. Joseph, 304 N. Y. 696) —have no application to the facts of the instant case. They involved proceedings to fix prevailing rates of wages under section 220 of the Labor Law. We said in Flannery (p. 155) that “ In proceedings of this nature ” (emphasis supplied) the civil service definition of an employee’s duties is determinative (cf. Matter of Golden v. Joseph, 307 N. Y. 62). Such a rule would of course be inapplicable to the reclassification of employees in unlimited salary grades, the very purpose of which was to recognize and reward them for work actually being performed.
Petitioner argues that if the attorneys assigned to the higher titles were doing the work prescribed for those titles prior to reclassification, such work would have been ‘‘ out of title ’ ’ and would have constituted a promotion under Matter of Williams v. Morton (297 N. Y. 328) as well as under the Constitution and the applicable statutes. A promotion is defined by the Civil Service Law (§ 16, subd. 7) as “an increase in the salary or other compensation of any person holding an office or position * * * beyond the limit fixed for the grade in which such office or position is classified ”. Under this definition, attorneys in former grade 4 could be assigned the higher salaries — since there was no ‘1 limit ’ ’ fixed for the grade — without such constituting promotions (see Matter of Sanger v. Greene, 269 N. Y. 33; Matter of Crosby v. Board of Educ., 187 App. Div. 205, 209-210, affd. 226 N. Y. 705; People ex rel. Stokes v. Tully, 108 App. Div. 345, 351).
Matter of Williams v. Morton (supra) is not to the contrary. In that case, Dr. Conboy, an examining physician, grade 4, was employed by the Board of Education. In 1942 the board created the position of chief medical examiner, to be the head of the entire medical staff, and provided that appointment should be made to the position from an eligible list established by a competitive examination. Since the war emergency seemed to stand in the way of a permanent appointment to the position, the board in 1942 assigned the duties to Dr. Conboy on a ‘ ‘ provisional ’ ’ basis and granted him a leave of absence from his position of examining physician, grade 4. In July, 1946, three months after being notified by the Municipal Civil Service *63 Commission that an examination for the position of chief medical examiner would have to be held, the board ‘ ‘ abolished ’ ’ the new position and restored Dr. Conboy to his former grade 4 position, giving him the same duties and salary, however, as he received as chief medical examiner. Under these facts we held that the employment of Dr. Conboy as head of the entire medical staff of the board constituted a promotion. The mere statement of the facts of the Williams case points up how different it is from the case before us.
In the instant case we are dealing with a determination of the City Civil Service Commission, made pursuant to statute and with the approval of the State Civil Service Commission, as a result of the joint efforts of the Department of Personnel, the Board of Estimate of the City of New York and the Bureau of the Budget, and as part of a comprehensive plan of reclassification. Here, the assignment of attorneys in grade 4 is said to conform with work actually and validly being performed within that grade. In the Williams case {supra) an additional title was created with exceptional duties admittedly beyond those which could be performed by grade 4 physicians, and the assignment thereto of Dr. Conboy, not pursuant to any plan of reclassification, was clearly intended to be and was a promotion. As for the purported abolition of the position and reassignment to grade 4, the court in effect disregarded this step and looked to the reality of the situation.
Petitioner also suggests that since all grade 4 attorneys were first reclassified as attorney, which is in the new grade 18, those who were later assigned to the higher positions in grades 23, 26 and 28 were promoted. The argument has no substance, however, since the original reclassification was provisional only, pending completion and subject to the results of the on-the-job survey, so that all incumbents would be entitled to receive the new minimal salary in the interim.
We have here, then, a situation of a group of attorneys who, as the result of competitive examinations, were duly appointed to the same grade 4, the highest competitive grade of legal service in the City of New York. There was no maximum on the amount of salary they might receive. They were subject to assignment to legal duties in the office of the Corporation Counsel. Concededly, their respective duties were different in *64 character. It is but natural that some excelled others in competence and industry, and that some would discharge more important legal responsibilities than others in one of the largest law offices in the world. "When those in authority charged with reclassification considered the situation of these former grade 4 attorneys, they were necessarily obliged to face realities. They found that assignments of duties had been made, some of which were specialized and supervisory.
Considerations analogous to those present here were involved in Matter of Clare v. Silver (4 N Y 2d 107), where we unanimously upheld the reclassification after a job survey by the State Civil Service Commission of certain positions in the Kings County District Attorney’s office. Judge Van Voorhis, writing for a unanimous court, said (p. 112): ‘ ‘ Respondent never had a legal right to be assigned by the District Attorney to perform all of the duties of a county detective. He had to do what the District Attorney directed. For seven years before this classification took effect, the duties assigned to him had been limited to serving process. The civil service classification did not change the nature of respondent’s work, but merely systematized the work in the District Attorney’s office according to a pattern which had already been worked out. The specialization had taken place before the classification, which formalized-what had occurred.”
As already noted, the plan of reclassification and the designation of positions is not challenged; petitioner merely attacks the slotting into these positions of the present incumbents, claiming that this should not have been done without a promotional examination. We are in agreement with the Appellate Division that a reclassification which conforms the civil service structure to the realities which obtained in the operation of the agency prior to reclassification ’ ’ is valid. If, therefore, assignments were made pursuant thereto, they would not constitute promotions within the meaning of the Constitution and the Civil Service Laws (see Matter of Cook v. Kern, 278 N. Y. 195; Matter of Sanger v. Greene, supra; Matter of Sippell v. Dowd, 191 Misc. 558, 562, affd. 274 App. Div. 1027).
The case at bar more nearly fits in with the pattern of Matter of Cook v. Kern (supra) than with the pattern of Matter of Williams v. Morton (supra). In the Cook case, certain incum *65 bents had been originally validly appointed to the position of “ stationary engineer ”, but had for years been performing the duties of “ stationary engineers in charge ” under an office designation. The Civil Service Commission officially created a new classification known as “ stationary engineer in charge ” and permitted said incumbents to continue to perform the duties of “ stationary engineer in charge ” without examination. We denied an application to oust them, and said (p. 199) : “ Having received original valid appointments, they have the right to remain in their positions, even though a new classification has been effected and new requirements exacted. [Citing cases.] ”
Thus the question remains: Was the assignment of the incumbents to the position of senior attorney, supervising attorney and principal attorney a recognition of the facts as they existed prior to reclassification? While both sides are of the opinion that a hearing is unnecessary, we are in accord with the Appellate Division that this question presents a triable issue (Civ. Prac. Act, § 1295). If upon a hearing Special Term finds there was no rational basis upon which respondents could determine that one or more persons had prior to reclassification performed the duties assigned after reclassification, the appointment of such person or persons may be invalidated without disturbing appointments which were validly made.
A word should be added concerning the Appellate Division’s opinion as to the nature of the evidence admissible at the hearing. It pointed out that “it is, generally, not the office of the court to take original evidence of the facts ” existing prior to, or as proposed should exist, after reclassification, and added: “ all that need be developed * * * is the basis upon which the several administrative agencies acted, at the time they acted, in promulgating the reclassification and reallocation ”. Petitioner claims that this would unduly restrict his proof upon a hearing. It is clear, however, that any competent and relevant proof petitioner may have, bearing on the triable issue here presented and showing that any of the underlying material on which the Commission based its determination has no basis in fact, would be admissible. (Civ. Prac. Act, § 1295; see Matter of Newbrand v. City of Yonkers, 285 N. Y. 164, 178; Matter of Hodgins v. Bingham, 196 N. Y. 123, 126-127; *66 People ex rel. Lodes v. Department of Health, 189 N. Y. 187, 194; 1 Benjamin on Administrative Adjudication in State of New York, pp. 353-356; see, also, Third Annual Report of N. Y. Judicial Council, 1937, pp. 147-148.)
The order of the Appellate Division should be affirmed, and the matter remitted to Special Term for further proceedings not inconsistent with this opinion. Both questions certified should be answered in the affirmative.
Fuld, J. (dissenting). I agree that the Civil Service Commission could, as it did, reclassify positions in the legal service of the City of New York. However, once the Commission effected the reclassification by abolishing grade 4 and placing the employees who had been in that grade in a newly established salary grade, it could not, in my view, thereafter reallocate and transfer some of them to a still higher salary grade — and thus, in effect, promote them—by a noncompetitive re-evaluation of their actual duties. Such action, I very much fear, will open the door to evasion of essential and salutary civil service requirements. (E.g., Civil Service Law, § 16, subd. 7.) Promotion in the competitive civil service demands competitive examination, and we should not accept reclassification coupled with noncompetitive surveys of a particular employee’s duties as a substitute.
Chief Judge Conway and Judges Desmond, Dye and Van Voorhis concur with Judge Froessel; Judge Fuld dissents in an opinion; Judge Burke taking no part.
Order affirmed, without costs. Questions certified answered in the affirmative.

 There seems to be some question as to the exact number.