*480
 
 G-abbielli, J.
 

 Petitioners, successful at Special Term upon a Referee’s finding that they should be classified Court Clerk III rather than Court Clerk II, were turned back in the Appellate Division where a unanimous court found that the classification of Court Clerk II assigned by respondent, Administrator of the State Judicial Conference, was not arbitrary or capricious. Petitioners’ contention here is that the standard of number of people
 
 supervised,
 
 assertedly used by respondent and approved by the Appellate Division, is nowhere made a criterion for classification in the Court Clerk III category.
 

 The history of the court reorganization and classification plan is detailed in Judge Bbeitel’s opinion in
 
 Matter of Ainsberg
 
 v.
 
 McCoy
 
 (26 N Y 2d 56). The classification provisions became
 
 *481
 
 effective July 1, 1966. Non judicial employees were continued in the employment which at that point became classified. Four levels of Court Cleric were described, levels I and II being competitive positions, and levels III and IV being noncompetitive. A rash of article 78 proceedings, of which this is one, broke out as a result of respondent’s decisions concerning who belonged in what classification. The hearing Referees have uniformly determined the employees entitled to the higher classification they claimed, rather than to the lower classification to which respondent assigned them. Results in the Appellate Division have varied (e.g., Referees’ determinations reversed in
 
 Matter of Daye
 
 v.
 
 McCoy,
 
 39 A D 2d 610, affd. 31 N Y 2d 770;
 
 Matter of Hershfield
 
 v.
 
 McCoy,
 
 37 A D 2d 660, affd. 31 N Y 2d 770; Referees’ determinations affirmed in
 
 Matter of Grilihas
 
 v.
 
 McCoy,
 
 35 A D 2d 1060;
 
 Matter of Shapiro
 
 v.
 
 McCoy,
 
 35 A D 2d 1060). In one case that reached this court we reversed the Appellate Division’s affirmance of Special Term’s annulment of respondent’s classification decision and reinstated respondent’s determination
 
 (Matter of Byrne
 
 v.
 
 McCoy,
 
 29 N Y 2d 440). In another case we reversed the Appellate Division’s reversal of Special Term’s annulment, holding that respondent was wrong and that Special Term’s reclassification was correct
 
 (Matter of Ainsberg
 
 v.
 
 McCoy, supra).
 

 In the instant cases petitioners were, in fact, reclassified by respondent to Court Clerk III as of July 21, 1971. They claim that they should have been so classified as of July 1, 1966 when the classification provisions became effective, and contend that they are eligible for the higher salary for the period July 1, 1966 through July 21, 1971. It is urged, and logically so, that respondent’s reclassification of the petitioners to Court Clerk III in 1971 is an admission that they should have been so classified in 1966 since their duties had not varied in the interim.
 

 Roistacher became Clerk in Charge of Parts 30 and 31 of Criminal Term, Supreme Court, New York County, under the reorganization of 1962 and has supervised clerical work of these parts including pretrial matters, grand jury selection, habeas corpus proceedings, bail matters, etc. In 1966 he supervised three other clerks also classified as Court Clerk II, and his immediate supervisor was a Deputy Clerk. Nine Supreme Court Justices and the General Clerk of the Supreme Court in New York
 
 *482
 
 County have, by letters admitted in this proceeding, certified that Eoistacher ought to he in the Court Clerk III category.
 

 McPartland has, since 1964, been Clerk in Charge of Parts 12 and 13, Supreme Court, Bronx County. His duties include co-ordinating assignment of cases for trial in five trial parts, and he supervised one Court Clerk I, one Court Clerk II, five or six other court officers and a court reporter. He has also furnished letters from Justices in his behalf in the record.
 
 [1]
 

 The hearings in these cases were the result of previous Appellate Division decisions that there were insufficient bases upon which to determine the reasonableness of respondent’s determinations that petitioners should be Court Clerk IIs for the period in question (35 A D 2d 641, 644). At the hearings on remand the Personnel Officer of the Administrative Board of the Judicial Conference, testified at great length. He agreed that petitioners did work which could easily fall within the Court Clerk III job description and, in a somewhat equivocal passage, semed to say that the criterion used in classifying petitioners as Court Clerk IIs was the number of people they supervised. This is the sole basis for the classification, as settled upon in respondent’s brief, and the basis employed by the Appellate Division for its reinstatement of respondent’s determination.
 

 The signal aspect of respondent’s job descriptions for Court Clerk II and III is that the number of people or other clerks supervised is nowhere specified as a criterion.
 
 [2]
 

 
 *483
 
 The Referee made findings among which were that the job descriptions “ are vague, ambiguous and overlapped;” that respondent had not shown that petitioners were not performing Court Clerk III work; and that
 
 “
 
 the fact that the work done also comes within the category of Court Clerk II should not relegate them to that title.”
 

 The only differentiation insofar as supervision is concerned " in the job descriptions is that Court Clerk IIs act as supervisors of large general offices; and as clerks of large or complex trial or special term parts. Court Clerk Ills supervise
 
 very
 
 large operations. Other than this extremely vague difference in wording as to the size of the over-all task generally, there is no language which sets up numbers of people supervised as a criterion, and the classifications were admittedly made in these cases on no other basis. The inference must then be that respondent found petitioners’ duties otherwise classifiable under the Court Clerk III category.
 

 The
 
 Hershfield
 
 case (37 A D 2d 660, affd. 31 N Y 2d 770,
 
 supra),
 
 cited below by the Appellate Division, was a case involving claims of Court Clerk Ills that they sought to be Court Clerk IVs and, in dictum, the court stated: “ The difference between Court Clerk II and Court Clerk III is largely determined by the
 
 *484
 
 number of subordinate employees and the volume of work ” (37 A D 2d, at p. 661). Certainly differences in volume of1 work can be drawn by comparing the job descriptions, but the court’s statement as to numbers supervised is in no way supported by any objective standards found in the job descriptions or, insofar as is shown in these cases, anywhere else. The inconsistent application of the ethereal “number of people supervised” standard is typified in
 
 Matter of Daye
 
 v.
 
 McCoy
 
 (39 A D 2d 610, affd. 311 N Y 2d 770,
 
 supra)
 
 handed down with the instant cases. In
 
 Daye
 
 the Referee held that petitioner should be jumped from a II to a IV classification. The Appellate Division reversed the Referee, but also disagreed with respondent, and held that petitioner really ought to be a Court Clerk III. In arriving at this result the court stated that numerical supervision is an important factor in job classification (citing
 
 Matter of Byrne
 
 v.
 
 McCoy,
 
 29 N Y 2d 440,
 
 supra)
 
 but that, as respected
 
 Daye,
 
 the number of employees supervised should not provide a sufficient basis on which to deny Court Clerk III classification. Not only does that holding seem at odds, on the face of it, with the companion holdings in the instant cases, but the citation of the
 
 Byrne
 
 case is misleading.
 
 Byrne
 
 dealt with Court Clerk IVs and the job specifications for TVs, unlike those for IIs and Ills, specifically states that a IV “ may supervise a large staff of court clerical employees. ’ ’ That aspect of the
 
 Byrne
 
 decision should thus not be applied to cases involving IIs -and Ills.
 

 Counsel for respondent argues on appeal that the Referee substituted his judgment for respondent’s since the Referee seemed to agree that it was impossible to tell the differences between the II and III categories; and from this flows the argument that there can be no arbitrariness in one view of petitioners’ status over the other. The answer to this is found in respondent’s own action in reclassifying petitioners to Court Clerk Ills effective in 1971. In
 
 Matter of Ainsberg
 
 v.
 
 McCoy
 
 (26 N Y 2d 56,
 
 supra)
 
 we held that respondent was bound by admissions contained in his answer in the article 78 proceeding which, in effect, admitted the crucial points alleged by petitioners, i.e., that petitioners’ prior duties conformed to the new Court Clerk II classification. Similarly, in the instant cases respondent has, in fact, reclassified petitioners into the III cate
 
 *485
 
 gory and petitioners’ duties, including number of people supervised, did not change from what they had been since, and prior to, 1966. We find it difficult to see how respondent can continue to assert under these circumstances that petitioners were not Court Clerk Ills between 1966 and 1971 when neither their duties nor the governing job descriptions changed.
 

 Counsel for respondent appears also to argue that the “ number of persons supervised ’ ’ test is one that can be applied by respondent in connection with the other criteria set forth in the job descriptions. If it is a standard thought relevant, as indeed it might well be, then it ought to be incorporated with some specificity into the job descriptions. Even if it could be said that it is a standard which need not be published and which can be applied
 
 ad hoc
 
 then certainly there ought to be consistency in its application by respondent and the courts. Clear inconsistency has been demonstrated as noted above.
 

 The problems in most of these cases can be traced to the job descriptions. If number of people supervised is thought to be a relevant standard then it should be specified as such. While administrators are entitled to great latitude in the carrying out of their duties, there can be no rational basis for the imposition of a job classification standard the limits and scope of which only the administrator seems to understand and which produces and increases tiresome litigation as diaphanous distinctions begin to proliferate.
 

 Respondent has thus not only admitted petitioners’ correct status, but the Referee’s determination is more than amply supported by evidence showing that petitioners were performing Court Clerk III duties, and that respondent had applied a standard which finds no objective support.
 

 Accordingly, the order of the Appellate Division should be reversed, without costs, and the judgment of Special Term reinstated.
 

 Judges'Burke, Brbitel, Jasen, Jones and Wachtler concur; Chief Judge Fuld taking no part.
 

 In each case: Order reversed, etc.
 

 [1]
 

 . Counsel for respondent has stipulated that both cases should be treated identically even though the jobs performed by petitioners are not entirely identical.
 

 [2]
 

 . “ COURT CLERK II
 

 “ Under direction performs administrative work or legal-technical work requiring a specialized knowledge of a complex area of procedural law and practice or a broad knowledge of the jurisdiction and functions of the court:
 
 acts as the supervisor of a large general office
 
 within the court with responsibility for coordinating the work of the various sections in the processing of legal papers from the commencement of an action through entry of judgment or disposition, execu- • tion of judgment and supplementary proceedings;
 
 acts as clerk of a large or complex trial or special term part, other than in the Supreme Court, acts as clerk of a trial part
 
 in the
 
 Supreme Court or as clerk of a lesser volume Special Term in that court;
 
 reviews papers and confers with attorneys on the more complex motions, applications, petitions and accounts and orders submitted to the court; reviews work of subordinates who make the initial examination of papers sub-
 

 
 *483
 
 mitted to the court; may confer with judges on matters related to the work of the court; controls court calendars; may prepare orders and decrees for the signature of a judge; may direct an important central or administrative service function for the court.
 

 “ qualifications: One year of permanent competitive service as a Court Clerk I or other level deemed to be appropriate. (Emphasis added.)
 

 “ COURT CLERK III
 

 “Under general direction performs exceptionally difficult and highly responsible administrative and legal-technical duties as the supervisor
 
 of a very large, separate court location or a very large Special Term or comparable part or activity: coordinates the activities of the various parts
 
 and offices under his supervision to insure the efficient operation of the court; confer with attorneys on unusual or difficult problems of practice and procedure in the court; trains subordinates in special areas of practice and procedures; is responsible for review of motion papers, applications, petitions and orders submitted by attorneys and litigants; supervises preparation and control of court calendars; may supervise empanelling of jurors for an entire judicial district where volume of litigation is unusually great.
 

 “ qualifications : One year of permanent competitive service as a Court Clerk II.” (Emphasis added.)