In the Matter of HOLY SPIRIT ASSOCIATION FOR THE UNIFICA-
TION OF WORLD CHRISTIANITY, Petitioner, v TAX COMMIS-
SION OF THE CITY OF NEW YORK, Respondent.

First Department, April 18, 1978

## APPEARANCES OF COUNSEL

*Lester Nelson* of counsel *(David S. Ward* with him on the brief; *Miller, Montgomery, Sogi, Brady & Taft,* attorneys), for petitioner.

*Edith I. Spivack* of counsel *(Russell D. Scott* with her on the brief; *W. Bernard Richland, Corporation Counsel),* for respondent.

## OPINION OF THE COURT

BIRNS, J.

In this article 78 proceeding, transferred to this court by an order dated September 21, 1977, petitioner seeks to review a determination by the New York City Tax Commission denying petitioner's application under section 421 of the Real Property Tax Law for exemption from real property taxes for three of its buildings in New York City.

Insofar as pertinent, that section provides: "1.(a) Real property owned by a corporation or association organized or conducted exclusively for religious * * * purposes * * * and used exclusively *for* carrying out thereupon * * * such purposes * * * shall be exempt from taxation".

Petitioner, organized under the General Nonprofit Corpora-

tion Law of the State of California,[1] acquired the three parcels in 1975 for which it seeks such exemption. It obtained the former Columbia University Club, located at 4 West 43rd Street. That property had an assessed valuation of $1,025,000 in the 1975-1976 tax year. Its eight floors, the Tax Commission found, are used for sleeping quarters for members, offices of petitioner's national headquarters and of an affiliate, the International Cultural Foundation,[2] space for a film department, public affairs press service, dining room and lecture room, and other areas used for prayer, conferences, study, assemblies and services. At the time of application for exemption some commercial income was generated from storekeepers on the ground floor whom petitioner was attempting to evict.

A second Manhattan property at 305 West 107th Street is a five-story townhouse assessed at $34,000 that affords living and study quarters gratis for 11 members who attend nearby Columbia University and three other nonstudent members.

1. Petitioner's articles of incorporation, dated September 2, 1961, enumerate its "primary purpose" as the "worship of GOD and the study, teaching, and practical application of Divine Principles." Other listed purposes include operation of "Churches, Schools, Colleges, Religious Retreats, Hospitals, Rest Homes, Missions, Homes for the Aged and Infirm, Orphanages, and other religious and benevolent enterprises" (art II). Its property is to be "exclusively and irrevocably dedicated to religious, charitable, scientific, educational, or hosptial purposes" (art VIII). In 1963 the above articles were amended to restrict petitioner's purposes to the primary one of religion. Indeed, article VIII was amended to provide: "No part of the activities of the corporation shall be carrying on propaganda, or otherwise attempting to influence legislation, or participating in, or intervening in (including the publication or distribution of statements), any political campaign on behalf of any candidate for public office." A further amendment to article II in 1968 even limits petitioner's activities "except to an insubstantial degree, which are not in furtherance of its primary religious purpose." Petitioner's by-laws, amended through 1968, however, contain authority to operate the same facilities for religious and benevolent enterprises exactly as enumerated in article II of the original articles of incorporation.

2. International Cultural Foundation was organized in 1973 as a New York not-for-profit corporation. According to the testimony before the Tax Commission given by Neil Albert Salonen on behalf of petitioner, the purposes of that corporation are educational and cultural and its activities "are consistent with the purposes of the Church." Though the foundation occupies only .7% of space in the building, it is difficult on the record on review to judge the extent of its cultural and educational activities out of other offices in the same building or elsewhere. Mr. Salonen is not only president of the church, he is an officer of the International Cultural Foundation, the Freedom Leadership Foundation and the International One World Crusade. Freedom Leadership Foundation is a separate corporation organized to combat communism principally by education. The goals and activities of this organization further general church purposes. The International One World Crusade distributes information about interdenominational activities of the Unification Church.

The nonstudents proselytize, teach and administer the building. The students may conduct with school contacts "certain missionary type teaching". Prayer and worship services are conducted and sometimes lectures and discussions about the church take place at this property which petitioner considers a "church center".

The third parcel is located in the former Loft Candy factory at 38-38 Ninth Street, Long Island City, in Queens County. Assessed at $1,555,000, that property houses the petitioner's publications department where works related to church doctrine will be printed. In addition, church vehicles are repaired and various construction supplies and church archives are stored there.

In March, 1976 petitioner filed its applications with respondent for tax exemption of these three properties. Almost a year later, in January, 1977, respondent convened to consider the applications.

Testimony was heard, in a nonadversarial[3] context, in support and in opposition. Ultimately, the commissioners by a 4 to 3 vote rejected the exemption applications. The majority concluded that petitioner failed to meet the burden of establishing that petitioner was organized or conducted exclusively for religious purposes (Real Property Tax Law, § 421, subd 1, par [a]). The majority found that "although the applicant association does in certain aspects bespeak of a religious association, it is in our opinion so threaded with political motives and activities that it requires us to deny the application * * * the political activity of the applicant is more than an incidental part of their operation." The dissenters considered themselves bound to accept petitioner's religious essence, and without power to delve into the validity of its beliefs. Neither opinion analyzed the second test of exemption—whether the premises themselves were being used exclusively for petitioner's religious purposes.

■ Initially, we are confronted with a procedural question—whether the proceeding was properly transferred to this court pursuant to CPLR 7804 (subd [g]). A transfer under that

3. The commissioners asked questions but there was no assistant corporation counsel present to interrogate or cross-examine. Petitioner, though represented by counsel, neither cross-examined nor posed questions of witnesses testifying in opposition to its applications. Its counsel did participate very infrequently mostly to offer a document or introduce a witness in support of the applications with a few preliminary questions.

section is proper only where an issue is raised of "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence." (CPLR 7803, subd 4.) In this proceeding, the hearing before the Tax Commission was not held "pursuant to direction by law." Respondent's hearing was simply a matter of gathering information. (Cf. Administrative Code of City of New York, § 165-1.0.) No question of substantial evidence can, therefore, be tendered in the proceeding at bar where the test of review, instead, appears to be whether the rejection of tax exemption was arbitrary and capricious. (8 Weinstein-Korn-Miller, NY Civ Prac, pars 7803.04, 7803.11.)

Accordingly, Special Term should have determined the matter.[4] However, once transferred, this court should decide the proceeding, rather than retransfer it. (Cf. *Matter of 125 Bar Corp. v State Liq. Auth.,* 24 NY2d 174, 180; and see *Matter of Brown v North Syracuse Cent. School Dist.,* 55 AD2d 813; *Matter of Willow Gardens Apts. v Riker,* 36 AD2d 892; *Matter of Fasani v Rappaport,* 30 AD2d 588; 24 Carmody-Wait 2d, NY Prac, § 145:354.)

Although the circumstances in this case very nearly compel a departure from that procedure, we have decided to follow it even here, in the interests of minimizing the inconvenience to the parties and the delay in the ultimate resolution of petitioner's qualification for exemption from real property taxation of its three parcels. Even though we are retaining jurisdiction, it should be noted that the intrinsic nature of the proceeding is unchanged and that the standard for review remains the same—whether the determination was arbitrary and capricious.

██ To sustain the determination of the Tax Commission that the real property involved is subject to taxation, it must appear, simply, (1) that petitioner is not organized or con-

4. In all of the recent cases decided under section 421 of the Real Property Tax Law the proceeding reached the Appellate Division by appeal rather than transfer. (*Matter of Association of Bar of City of N. Y. v Lewisohn,* 41 AD2d 1026, revd 34 NY2d 143; *Matter of Explorers Club v Lewisohn,* 42 AD2d 537, revd 34 NY2d 143; *Matter of Watchtower Bible & Tract Soc. v Lewisohn,* 43 AD2d 666, affd 35 NY2d 92; *Matter of American Bible Soc. v Lewisohn,* 48 AD2d 308, affd 40 NY2d 78; *Matter of America Press v Lewisohn,* 48 AD2d 798, mot for lv to app den 38 NY2d 708; *Matter of Swedenborg Foundation v Lewisohn,* 48 AD2d 798, affd 40 NY2d 87.) It is also worth noting that proceedings to review tax assessments, *inter alia,* for illegality must be brought at Special Term. (Administrative Code, § 166-1.0, subd d.)

ducted exclusively[5] for religious purposes[6] or (2) even if so organized or conducted, that the properties under scrutiny are themselves not used exclusively for those purposes. In arriving at its determination, however, the Tax Commission may resort to a strict construction against the taxpayer seeking the exemption *(Matter of Assn. of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, 153; Powell's Reducing Realty Taxes 168 [3d ed]).

■ ■ It has been said that this court sits in review of administrative determinations solely on the law *(Matter of Gimprich v Board of Educ.,* 306 NY 401; *People ex rel. Kennedy v Brady,* 166 NY 44, 47-48; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7803.10). But, where the record is not sufficient to permit an informed judgment as to whether the administrative body has acted arbitrarily or capriciously, and it appears that further factual exploration could supply defects in the proof, a remand for a hearing to develop the necessary data may be required. *Matter of Mandle v Brown* (5 NY2d 51) presented an attack on civil service reclassification of attorneys in the city's law department. The record was deficient on which to judge the existence of a rational basis for the administrative determination that certain persons had, prior to reclassification, performed the duties assigned after reclassification. Despite agreement by the parties that no

---

**5.** For purpose of section 421 of the Real Property Tax Law, exclusively means principally or primarily. *(Matter of Association of Bar of City of N. Y. v Lewisohn,* 34 NY2d 143, 153.) Mr. Salonen testified that one of the primary purposes of the residents of the various buildings involved in this proceeding is of a missionary nature. If that were petitioner's primary purpose, its properties would not be exempt (Real Property Tax Law, § 421, subd 1, par [b]; Administrative Code, § J51-3.0).

**6.** The twofold burden imposed upon the Tax Commission in *Matter of Watchtower Bible & Tract Soc. v Lewisohn* (43 AD2d 666, affd 35 NY2d 92, 97)—to prove that petitioner is organized and conducted exclusively for bible, tract, missionary or other nonexempt purposes *and* to negate its organization and conduct exclusively for religious purposes—does not apply here. Unlike *Matter of Watchtower Bible & Tract Soc. v Lewisohn (supra), Matter of Explorers Club v Lewisohn (supra), Matter of Swedenborg Foundation v Lewisohn (supra), Matter of Assn. of Bar v Lewisohn (supra), Matter of American Bible Soc. v Lewisohn (supra),* and *Matter of America Press v Lewisohn (supra),* petitioner's properties at bar were newly acquired and never enjoyed exemption under the Real Property Tax Law prior to January 1, 1972, the effective date of section J51-3.0 of the Administrative Code which withdrew tax exemption from properties owned by entities not organized or conducted exclusively for religious, charitable, hospital and other purposes enumerated in section 421 (subd 1, par [a]) of the Real Property Tax Law. Thus, insofar as petitioner's organization and conduct are concerned, the Tax Commission at bar must negate only the exclusively religious purpose that petitioner claims to have.

hearing was necessary, a remand to Special Term was directed. The Appellate Division, per BREITEL, J. (4 AD2d 283, 287-288), had, however, imposed restrictions on the scope of that hearing:

"In the conduct of such an inquiry, however, it is, generally, not the office of the court to take original evidence of the facts, either as they existed prior to reclassification, or as it is proposed they should exist subsequent to reclassification. This is a proceeding under article 78. It concerns an administrative determination in the exercise of discretion, and such determination is sustainable if there be any rational basis for it. Put negatively: The court's power to review ceases if it appears that the action was neither arbitrary nor capricious; the court's function is not to redetermine the issue or to weigh the evidence the administrative agencies had before them. [Citations omitted.]

"Consequently, all that need be developed upon a judicial inquiry is the basis upon which the several administrative agencies acted, at the time they acted, in promulgating the reclassification and reallocation."

The Court of Appeals disagreed: "It is clear, however, that any competent and relevant proof petitioner may have, bearing on the triable issue here presented and showing that any of the underlying material on which the Commission based its determination has no basis in fact, would be admissible." (5 NY2d, at p 65.)[7] With respect to the case at bar, CPLR 7804 (subd [h]) provides: "If a triable issue of fact is raised in a proceeding under this article, it shall be tried forthwith. Where the proceeding was transferred to the appellate division, the issue of fact shall be tried by a referee or at a trial term of the supreme court and the verdict, report or decision rendered after the trial shall be returned to, and the order thereon made by, the appellate division." That provision

---

7. Insufficient basis to determine the reasonableness of administrative determinations, neither judicial nor quasi-judicial in their evolution, prompted remands to Special Term in *Matter of McPartland v McCoy* (35 AD2d 641) and *Matter of Roistacher v McCoy* (35 AD2d 644) to take evidence "explaining or elaborating the meaning and effect of [certain] job descriptions." (After the hearings the Court of Appeals ultimately upset the administrative determinations in those cases in agreement with Special Term's conclusions. *(Matter of Roistacher v McCoy,* 32 NY2d 479.) See, also, *Duquin v Colucci* (55 AD2d 832) where the court found an inadequate basis "to demonstrate the rationality" of the administrative determination. A remand was directed to afford respondent an opportunity to demonstrate the existence of a rational basis.

would seem to authorize the Appellate Division to remand for trial of fact issues only in a transferred proceeding. Such a limitation is the result of a drafting error. Indeed, in cases properly transferred to the Appellate Division (CPLR 7804, subd [g]) the test of review is substantiality of the evidence before the administrative tribunal. Lack of such evidence cannot be cured by evidence taken on a remand to Trial Term. Therefore, it would seem that, except in proceedings originally commenced in the Appellate Division (as, for example, prohibition against a Judge), the trial contemplated by CPLR 7804 (subd [h]) can only take place in a proceeding to review administrative determinations that are other than quasi-judicial and, hence, in a proceeding that can never be properly transferred to the Appellate Division. (8 Weinstein-Korn-Miller, NY Civ Prac, par 7804.10.) Curiously, in this case a remand under CPLR 7804 (subd [h]) is authorized under the literal wording of that section solely because of the erroneous transfer. In any event, this court has general powers to provide for a trial by reference or transfer. (8 Weinstein-Korn-Miller, NY Civ Prac, par 7804.10.)

Had this case reached us by the proper method of appeal after judgment, quite likely we would have found that Special Term had directed a trial or hearing of the very factual matters we find deficiently developed in the record now before the court. The late Justice SPIEGEL presided at a trial of the facts concerning petitioner's activities in the article 78 proceeding brought by the America Press, Inc. *(Matter of America Press v Lewisohn,* 74 Misc 2d 562, affd 48 AD2d 798.) Justice SIDNEY FINE ordered a reference to a Special Referee to hear and report on the issue of the use to which Swedenborg Foundation, Inc. was putting its property. *(Matter of Swedenborg Foundation v Lewisohn, supra.)*

It is impossible to determine on the record now before the court whether respondent acted arbitrarily in denying the exemption.[8] This difficulty stems from the inadequacy of the record as to the dominant purposes of petitioner and the actual use of the properties in question. The respondent—at least a majority of the commissioners—has concluded that,

---

8. Perhaps that observation would suffice to put petitioner out of court for failing to establish a clear legal right to the relief sought. *(Matter of Gimprich v Board of Educ.,* 306 NY 401, 406, *supra.)* Yet, we are mindful of the burdens placed on the Tax Commission. *(Matter of Watchtower Bible & Tract Soc. v Lewisohn,* 43 AD2d 666, affd 35 NY2d 92, *supra.)*

although petitioner is ostensibly organized as a religion, its nominal purpose is merely a facade for political action and dissemination of propaganda. Petitioner's original articles of incorporation would accommodate that view although not as amended through 1968. Thereafter only its by-laws seem to empower the activities that respondent found to be dominant. Petitioner contends that its articles must be given conclusive effect citing *American-Russian Aid Assn. v City of Glen Cove* (41 Misc 2d 622, affd 23 AD2d 966) and *Matter of Great Neck Section of Jewish Women v Board of Assessors* (21 Misc 2d 142).[9] Whether that is an accurate proposition is questionable (cf. *Christian Echoes Nat. Ministry v United States*, 470 F2d 849, cert den 414 US 864, and *Parker v Commissioner of Internal Revenue*, 365 F2d 792) but we need not now decide it in view of the conflict between the articles and by-laws.

■■ In searching for the primary purpose of the petitioner *(Matter of Assn. of Bar of City of N. Y. v Lewisohn*, 34 NY2d 143) not only must we look for the connection with an organized religion as in *Matter of Watchtower Bible & Tract Soc. v Lewisohn (supra)* or *Matter of America Press v Lewisohn (supra)* but also we should analyze petitioner's activities for their generic religious content. As Judge JONES wrote in upholding the denial of a religious exemption in *Matter of Swedenborg Foundation v Lewisohn* (40 NY2d 87, 94: "Indeed it appears that a significant portion of the works of Swedenborg, and thus of the publications of the foundation, relate to scientific and philosophical rather than to theological tenets and writings, and thus may not be described as religious even in the generic sense." That is not to say that a court will be plunging into the thicket of religious doctrine or sitting "in judgment upon the content and context of pulpiteering". *(Matter of America Press v Lewisohn*, 74 Misc 2d, at p 568.) On the other hand, the respondent is not required under section 421 of the Real Property Tax Law to exempt an organization whose activities are generically anything but religious merely because the taxpayer says that those activities are among its theological doctrines.

The record is obscure not only respecting petitioner's domi-

---

9. In *Matter of Great Neck Section of Jewish Women v Board of Assessors (supra)* tax exemption was *denied* on the basis of the purposes stated in petitioner's articles. The court in *American-Russian Aid Assn. v City of Glen Cove (supra)* used the certificate only as the threshold inquiry. The certificate would foreclose further analysis only if it demonstrated the taxpayer was disqualified from exemption.

nant purpose but also concerning the usage of the properties in issue. Witnesses before respondent testified variously on that subject. One said that the inhabitants of these buildings had a predominantly missionary purpose. (See n 5, *supra.*) Some testimony indicates an interrelationship between the church and at least one nominally independent entity, organized for nonexempt purposes and lodged in one of the buildings sought to be exempt, tending to impugn not only petitioner's own dominant purpose but also the use to which its properties are being put.

The foregoing suffices to sketch the skeleton to be fleshed out by the evidence at a hearing before a Special Referee. The hearing will be plenary and, unlike the one conducted by the Tax Commission, adversarial as well. Because of the obscurity of the administrative hearing record, we have concluded to direct a full examination of the facts and a broad inquiry into petitioner's predominant purpose[10] especially since that was the sole basis on which the Tax Commissioners attempted to concentrate in deciding the exemption applications, and also into the actual uses to which the subject properties are being devoted.[11]

Our detailed exegesis is intended for the guidance of the Special Referee.

Accordingly, the matter should be remanded to the office of the Special Referees, Supreme Court, New York County, for assignment to a Special Referee to hear and report to this court, in accordance with the foregoing opinion. The report should reflect, *inter alia,* whether on the basis of the evidence elicited at the hearing the determination of respondent heretofore made in this proceeding was arbitrary and capricious (see *Matter of Mandle v Brown,* 5 NY2d 51, 65, *supra).* Pending receipt of the report, this proceeding should be held in abeyance.

---

10. There is no need now to determine whether the term "organized or conducted" as it appears in section 421 (subd 1, par [a]) of the Real Property Tax Law is to be construed as conjunctive or disjunctive. Such determination must await the receipt of the Referee's report.

11. At this stage we do not reach the question, posed by the respondent, of whether section 166-1.0 of the New York City Administrative Code and section 166 of the New York city Charter required an ealier review proceeding with respect to partial exemption of one parcel, except to note in *Matter of Watchtower Bible & Tract Soc. v Lewisohn (supra)* where a similar argument was rejected, the ratio of exempt to nonexempt uses had been historically fixed.

Lupiano, J. P., Lane, Sandler and Sullivan, JJ., concur.

Determination of respondent, dated April 13, 1977, unanimously remanded to the office of the Special Referees, Supreme Court, New York County, for assignment to a Special Referee to hear and report to this court in accordance with the opinion of this court filed herein. The report should reflect, *inter alia,* whether on the basis of the evidence elicited at the hearing the determination of respondent heretofore made in this proceeding was arbitrary and capricious (see *Matter of Mandle v Brown,* 5 NY2d 51, 65). Pending receipt of the report, this proceeding is held in abeyance.