OPINION OF THE COURT
Stephen G. Crane, J.
This case pits conflicting public policies against one another. It presents intensely difficult issues of government agency social responsibilities and of rights of contractors and their employees under competitive bidding statutes intended to protect the public fisc.
This is an article 78 proceeding brought by a union, a painting contractor and an association of painting contractors for a judgment voiding the award, without competitive bidding, of a contract made by respondent, New York City Transit Authority (TA), with respondent Wildcat Service Corporation (Wildcat) for the painting of three subway stations. The petitioners seek a declaration that such work in the future constitutes public work mandating competitive bidding; and they want a directive that the TA seek return of all payments made to Wildcat under this contract. The petitioners move for a preliminary injunction to stop the work and all payments under the contract.
CROSS MOTION TO DISMISS
Wildcat cross-moves under CPLR 3211 and 3212 to dismiss the petition. This will be treated as a motion under CPLR 7804 (subd [f]) raising an objection in point of law. Insofar as Wildcat objects to petitioners’ standing, the cross motion is denied. In other respects it is denied as unnecessary. The concerns it addresses will be disposed of with the merits of the petition.
LABOR LAW, § 220
All issues relating to section 220 of the Labor Law have been withdrawn and the proceeding against the Corporation Counsel has been discontinued by stipulation.
MISJOINDER
The Metropolitan Transportation Authority (MTA) was joined only because its board was allegedly identical to that of the TA. Yet, no separate claim is established *812 against the MTA. The petition against that respondent is severed and the proceeding dismissed as to it.
COUNTERCLAIM
Wildcat has interposed a counterclaim for damages against petitioner District Council No. 9. Without passing on its legal sufficiency, the court notes that it sounds in defamation. While counterclaims are contemplated in article 78 proceedings (CPLR 7804, subd Ed]), the public issues in the main proceeding are irrelevant to the defamation claim, and the TA is an unnecessary party in its adjudication. It is appropriate that the counterclaim be severed and that the proceedings thereon continue as an action (CPLR 407).
PRELIMINARY INJUNCTION
The court withheld any temporary restraining order at the time the order to show cause was signed. On oral argument the court again refused any temporary restraint. It relied on a presumption of regularity in TA’s award of the contract. The court noted that the relief sought would not become academic if the work continued. The court weighed, on one hand, the prejudice to petitioners and to the public policy embodied in subdivision 1 of section 1209 of the Public Authorities Law, if relief were withheld, against, on the other hand, the prejudice to the TA, Wildcat and the public interest favoring the social objectives Wildcat pursues, if injunctive relief were granted. These same considerations influence the court in denying the preliminary injunction.
Respondents argue that petitioners are guilty of laches. For example, the contract was approved at an open meeting of the TA board on June 11,1982. Yet, petitioners say they learned of the contract under attack after August 13, 1982, and they took prompt steps to confirm its existence and to sue to stop its performance. Triable issues exist regarding the laches claim. Nevertheless, there is no need to encumber this proceeding with those issues. The petition itself demands return of any moneys paid to Wildcat if it is ultimately determined that the contract was illegally awarded. (Grand, Inc. v City of New York, 32 *813 NY2d 300, 305; Gerzof v Sweeney, 22 NY2d 297, 305.) Thus, the damage to the public purse, if any, can be satisfied at law. The damage to petitioners is at best speculative. There is no assurance that any member of the petitioner union or association, including petitioner L&L Painting Co., Inc. (L&L), would directly benefit from any award of a contract for painting the three subway stations. Indeed, it is more likely that Wildcat would be the low bidder. Accordingly, the application for a preliminary injunction is denied.
STANDING
Among the preliminary issues raised in the answers, the only one meriting discussion concerns the standing of the petitioners to bring this proceeding.[1]
L&L is a painting contractor that competitively bids on public work. If the contract between TA and Wildcat ultimately be found to be a public works contract, not exempt from the public bidding provisions of the Public Authorities Law, L&L would have the right to interpose a bid, as it has for TA projects in the past. Thus, L&L would be in competition with Wildcat for this contract. Similarly, District Council No. 9 is the collective bargaining representative of painters who would receive wages and benefits if their employers become successful bidders on public works projects; but, they cannot hope for these benefits if the work is withdrawn from competitive bidding. Likewise, their union stands to lose members, dues and bargaining power if public work dwindles. Lastly, in view of its membership, the association is interested for similar reasons in promoting competitive bidding. Its contractor-members are, after all, the potential winners of the award of such public works contracts. Unquestionably, the petitioners all fall within the zone of interest protected by subdivision 1 of *814 section 1209 of the Public Authorities Law. “A petitioner need only show that the administrative action will in fact have a harmful effect on the petitioner and that the interest asserted is arguably within the zone of interest to be protected by the statute.” (Matter of Dairylea Coop, v Walkley, 38 NY2d 6, 9; see, also, Matter of Morgenthau v Cooke, 56 NY2d 24, 30.)
COMPETITIVE BIDDING REQUIREMENT
Wildcat is a not-for-profit corporation dedicated to the rehabilitation and development of satisfactory work habits of persons with poor employment records resulting from alcoholism, drug addiction, imprisonment and economic or social disability. In pursuing its goals, Wildcat receives “clients” from a variety of governmental and quasi-public sources and trains them, not in a particular work skill, but in the motivations and attitudes necessary to maintain employment. Some of its programs satisfy the objectives of section 164-a of the Social Services Law pursuant to which Wildcat helps welfare recipients to become employable while receiving the “client’s” welfare benefits during the training period. The “client” receives wages from Wildcat.
Nothing is clearer than the fact that Wildcat is infused with a vital public interest. It is discharging a quasi-governmental function for which it deserves the loudest praises. Indeed, experienced law enforcement figures have joined in applauding its accomplishments of reducing crime and recidivism among Wildcat “clients”. Petitioners themselves are in the forefront in proclaiming Wildcat’s virtues in this sphere. Petitioners contend, however, that Wildcat may not discharge these laudable objectives by public work without engaging in competitive bidding. Contrariwise, Wildcat and TA argue that contracts for work by Wildcat clients are without the definition of public work or, if included, are excused from the competitive bidding provisions; respondents perceive an implicit exemption for assisting a public benefit program such as Wildcat. (Public Authorities Law, § 1202; cf. State Finance Law, §§174, 175-a, 175-b.) In this analysis, the benefits of painted subway stations are merely incidental.
There is a presumption of regularity in the award of the contract to Wildcat. (See 21 NY Jur, Evidence, §§ 108-111.) *815 It had the sponsorship of numerous responsible government officials who were well aware of the competitive bidding requirements. They all concluded that the public benefit of Wildcat’s program excuses the need for competitive bidding. This body of opinion should not lightly be ignored. Yet, petitioners have genuine cause to question this conclusion. Wildcat has been painting vast amounts of city property — the Tweed Courthouse, portions of the Criminal Court building at 100 Centre Street, Harlem Courthouse, City Center and in rem apartments for the Department of Housing Preservation and Development. In its initial proposal to TA in February, 1982, Wildcat proposed no limitation on the number of stations it could paint. Indeed, it suggested that it could paint up to 70 stations with one coat for an aggregate of $490,000. In June, 1982, the TA awarded a contract for three stations for $149,300. Work commenced on about August 23, 1982.
The respondents reject subdivision 1 of section 1209 of the Public Authorities Law as a limit on work of this magnitude. The only limit any respondent suggests is found in an affidavit of Howard H. Roberts, Jr., TA’s vice-president for finance and administration. He says: “Petitioner’s [sic] claim that this project will result in the Transit Authority having Wildcat perform all painting work is unfounded. This project is strictly limited and the Transit Authority does not intend on a wholesale basis to dispense with competitive bidding. The Transit Authority’s purpose is to provide Wildcat with a location where its workers can have genuine work experience and at the same time obtain improvements to its facilities. Wildcat in our opinion, however, has neither the capability nor the expertise to do more than a limited amount of such work.”
It is doubtful that the Legislature intended the good intentions of the TA to determine the limits of work exempted from the competitive bidding rules. Neither Wildcat’s transitory capabilities nor TA’s good faith can overcome Public Authorities Law requirements, if applicable, for competitive bidding.
Subdivision 1 of section 1209 of the Public Authorities Law provides in part: “Any contract for public work, except where there is an emergency involving danger to life or *816 property, the estimated cost of which exceeds twenty thousand dollars shall be made by the authority only upon public letting founded on sealed bids * * * The authority may reject all such bids and readvertise for new bids if it shall deem it for the public interest so to do. If not, it shall award the contract to the lowest responsible bidder.” No claim of emergency appears at bar; and the contract certainly exceeds $20,000.
The intent of the bidding statutes is to prevent favoritism, improvidence, extravagance, fraud and corruption and to promote economy in public administration and honesty, fidelity and good morality of administrative officers. (Matter of Signacon Controls v Mulroy, 32 NY2d 410, 415; Matter of Lauvas v Town of Bovina, 86 AD2d 694, 695; Albion Ind. Center v Town of Albion, 62 AD2d 478, 483, mot for lv to app den 45 NY2d 710; 10 McQuillin, Municipal Corporations [3d ed], § 29.29.) This policy is so strong that a violation of the competitive bidding statute renders a public works contract void. (Jered Contr. Corp. v New York City Tr. Auth., 22 NY2d 187; Grand, Inc. v City of New York, supra; Gerzof v Sweeney, 16 NY2d 206.)
Thus, the questions become whether there is, as respondents contend, an implicit exception to this policy in favor of an organization like Wildcat and whether the TA has the right to make an exception for contracts, that clearly contemplate public works, when the contractor is an organization that is itself performing a valuable service in the public interest. Indeed, is a contract with Wildcat ever one “for public work”?
The TA relies on section 1202 of the Public Authorities Law for the proposition that it has a broad right to act for the benefit of the public. As well motivated as this sentiment may be, the statute does not support its breadth. Subdivision 1 of section 1202 defines the purposes of TA: “the acquisition of the transit facilities * * * of the city and the operation of transit facilities in accordance with the provisions of this title for the convenience and safety of the public”. It is in connection with executing these purposes “for the benefit of the people of the state” that subdivision 2 declares that the authority is performing a governmental function in exercising its statutory powers. *817 None of its powers (Public Authorities Law, § 1204) transcends these purposes. Neither its purposes nor its powers, expressly or implicitly, include the bestowal of an opportunity to Wildcat to provide work experience to its “clients”, thereby assisting Wildcat in discharging its own public benefit purposes. Furthermore, the painting to be accomplished by Wildcat is hardly incidental for TA which is spending a bargain price of $149,300. This is patently public work.
Reading further in title 9 of article 5 of the Public Authorities Law, indeed in subdivision 2 of section 1209 itself, the court discovers exceptions to the competitive bidding requirements where the TA makes a proper resolution. No such resolution is alleged at bar. Even so, no exception under subdivision 2 arguably fits this case. And the inclusion of certain exceptions to the competitive bidding requirements excludes all other exceptions. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240.)
Comparison with the State Finance Law (from which respondents seek to draw an analogy to support the implicit exemption of the Wildcat contract) highlights the lack of an exemption under the Public Authorities Law. First, respondents suggest that because Wildcat employees are certified as handicapped, contracts for their work are not subject to competitive bidding. Yet, under the comparable provision of section 174 of the State Finance Law, the Legislature took the trouble to make an explicit exception for “blind-made products.” Suitable and detailed provisions were enacted for determination of prices of products and services from blind and severely handicapped persons and for their acquisition by the State. Surely, such an elaborate apparatus is absent from the Public Authorities Law. Respondents urge the court to erect similar provisions by implication.
If the respondents’ contentions had merit, it would be necessary to direct a hearing to determine the true scope and nature of the work contemplated by the contract,[2] the magnitude of Wildcat painting operations for governmental entities and the relation of these activities to its over *818 all purposes and budget. (Matter of Mandle v Brown, 5 NY2d 51; Matter of Holy Spirit Assn, for Unification of World Christianity v Tax Comm. of City of N. Y, 62 AD2d 188, 194-196, mot for lv to app den 45 NY2d 706.) An assessment could then be made of whether or not Wildcat’s contract is exempt from the competitive bidding requirement.
But, this court rejects such an approach. Though the objectives of Wildcat are, to say the least, laudable and deeply imbued with the public interest, the countervailing policies embodied in subdivision 1 of section 1209 of the Public Authorities Law run too deeply to permit the contract at bar to wade through them by implication. The Legislature has welcomed Wildcat-type organizations. (Social Services Law, § 164-a.) There is every reason to believe that an accommodation befitting this worthwhile organization can be made by the Legislature when it confronts the problems of competitive bidding and of any related concerns, no longer pending in this proceeding, that might be perceived under section 220 of the Labor Law.
In sum, the preliminary injunction is denied. Wildcat’s cross motion to dismiss upon objection in point of law is denied, the counterclaim by Wildcat is severed and converted into an action, petitioners’ claims under section 220 of the Labor Law and against the Corporation Counsel are withdrawn, the proceeding is severed as to MTA and the petition dismissed against that respondent and the remainder of petitioners’ application pursuant to CPLR article 78 is granted to the extent only of declaring void under subdivision 1 of section 1209 of the Public Authorities Law the contract awarded by TA to Wildcat in June, 1982 for the painting of three subway stations and directing that all work and payments thereunder cease. A declaration as to future contracts is unnecessary and would be advisory only. The demand that TA be directed to seek return of any payments to Wildcat under the contract should be left to the TA if it becomes necessary. Wildcat may become the successful bidder if bids are solicited. The foregoing dispositions are without costs awarded to any party.
*819 Settle judgment providing for a 30-day stay of implementation pending any appeal by Wildcat. The stay would be subject to extension by the Appellate Division.[3]

. Respondents raise questions of nonjoinder of necessary parties and failure to exhaust administrative remedies. Neither is a defect here. All necessary parties have been joined. Indeed, an unnecessary party, MTA, has been included. Other parties do not become necessary simply because they are interested in the outcome or have dealings with Wildcat. Finally, no unexhausted administrative remedy has been indicated with respect to still pending claims. No determination is made in this regard as to the withdrawn claim under section 220 of the Labor Law.

. It would also be necessary to determine whether the objective of this work falls within a legitimate area of contract for TA.

. If TA appeals, the stay is automatic. (CPLR 5519, subd [a], par 1.)