In the Matter of Leroy Mandle, Respondent, against Peter Campbell Brown, as Corporation Counsel of the City of New York, et al., Appellants.

First Department, June 28, 1957.

*Andrew Bellanca* of counsel (*Leo A. Larkin, Seymour B. Quel* and *John F. Kelly* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for appellants.

*Leroy Mandle,* respondent in person.

*Charles F. Murphy* for Association of Reclassified Employees in the Civil Service of the City of New York, *amicus curiæ.*

*Myron Caruso* for O. Lennart Rahm and another, *amici curiæ.*

*A. Bernard King* for Murray Herman and another, *amici curiæ.*

BREITEL, J. P. Petitioner, an attorney in the Law Department of the City of New York, by this proceeding under article 78 of the Civil Practice Act, attacks the reclassification of some 120 (or 139) attorneys in his department.* This reclassification was part of a citywide reclassification of some 125,000 positions, a major project authorized by State legislation, resolution of the Board of Estimate, and implemented by a costly management survey. The specific reclassification in the Law Depart-

---

* While the plan under which this reclassification was effected provides for an administrative appeal (Resolution on Career and Salary Plan, § IX, adopted Aug. 19, 1954), and the answer in this proceeding contains a defense of failure to exhaust administrative remedies, no point was made of this issue on the appeal. In any event, anyone is entitled to bring a proceeding to review an allegedly invalid reclassification (*Matter of Andersen* v. *Rice,* 277 N. Y. 271, 281; *Matter of Cash* v. *Bates,* 301 N. Y. 258, 261). Moreover, petitioner is not seeking a readjustment of his classification, but the striking down of the entire reclassification in his division.

ment is attacked on the ground that, instead of being merely a reclassification, it constituted a complete reorganization of a division with creation of new ranking positions and invalid elevation to such positions of a number of incumbents, all without competitive promotion examination.

Special Term sustained so much of the petition as averred that new positions of higher importance and salary had been created, restrained filling certain of such higher positions, and directed a hearing to determine the nature of the duties before reclassification of attorneys occupying Grade 4 titles.

The contentions of petitioner and the city agencies shake down to a few, simple, albeit crucial, issues. Petitioner argues that the purported reclassification was illegal. This is so, he says, because new duties—especially supervisory ones—, distinctively new titles, and substantially higher salaries are assigned to particular persons and positions without benefit of promotion examinations and selection from promotion lists. The city agencies, on the other hand, contend that the reclassification was no more than recognition, by new titles, new job descriptions, and appropriate salary adjustments, of the facts as they existed prior to reclassification. They argue that this being so, there were no new positions created; there were no vacancies to be filled; and, consequently, there was no occasion for promotion examinations or selection from promotion lists. The city agency also urges that in the event promotions were involved, then the giving of such examinations therefor was neither practicable nor desirable.

Involved in the case is the title of ' Attorney — Grade 4 '. This was a competitive civil service grade of long standing. It was, however, the highest grade in its occupational class, and without limit on salary range or duties assigned. This type of highest and unlimited grade, which occurs with some frequency in the competitive civil service, is in reality a grade with ungraded groups within it. Thus, within this grade there were a number of subtitles—Tax Counsel, Law Clerk, Law Assistant, Deputy Assistant Corporation Counsel, Associate Assistant Corporation Counsel, Assistant Counsel, etc.—, each with varying duties and responsibilities assigned. Nevertheless, within the grade, these subtitles bore no promotional or ranking relationship, one to the other. The differences among them were, nevertheless, sizable.

Petitioner held a position as Tax Counsel within the larger Grade-4. Under the reclassification the entire grade (i.e., Attorney — Grade 4) in the Law Department, has been reclassified into true grades, with present ranking and future promotional

relationships among them. To these new grades have been attached descriptions with much more detailed duties and responsibilities than were included in the old job descriptions. The higher grades notably involve various, significant supervisory responsibilities. Moreover, the salary adjustments resulting from the re-allocation of salaries represent substantial financial differences for many of these positions. While all, under the reclassification and reallocation, have received increases, those with the higher titles have, on a relative basis, received considerably larger increases.

The issues may be resolved by quite simple principles. A governmental agency, the employees of which are protected by the merit civil service system, may be reconstituted by reclassification. Such reclassification may involve the establishment of new titles, new job descriptions and an adjustment of salaries. Of themselves, none of these, alone or together, determines the validity or the invalidity of the reclassification. The reclassification is valid if it substantially conforms the civil service structure to the realities which obtained in the operation of the agency prior to reclassification. Thus, if the reclassification does no more than give accurate titles and more accurate job descriptions to positions which existed before the reclassification, it is unexceptionable. If, in the process, an adjustment of salaries is required in order to make rational the reward for actual duties and responsibilities of the reclassified positions, this reallocation, of itself, does not render invalid the reclassification. This is the effect of the holding in *Matter of Cook* v. *Kern* (278 N. Y. 195) and the cases which preceded it (e.g., *Matter of Fornara* v. *Schroeder,* 261 N. Y. 363; *Matter of Sandford* v. *Finegan,* 276 N. Y. 70). When such valid reclassification has been effected, as pointed out in the *Cook* case '' No new position has been created, no vacancy has occurred, and the sole purpose of the promotion examination was for filling vacancies '' (p. 199).

But the foregoing principle is not without limitation. If ' out-of-title ' work was invalidly imposed upon or assumed by the incumbents prior to the reclassification, it may not be validated by a reclassification which is based thereon. This means that one may not deliberately manipulate a reclassification simply by first imposing or by assuming new duties and responsibilities, and then thereby avoid the necessity for filling vacancies by promotion by reclassifying the added duties and responsibilities. This is the effect of the holding in *Matter of Williams* v. *Morton* (297 N. Y. 328). Indeed, the New York City

Civil Service Commission recognized this principle, for in the very Career and Salary Plan which it adopted, and under which the instant reclassification was made, it provided that ' out-of-title ' work be disregarded. (Resolution on Career and Salary Plan, § IV, adopted Aug. 19, 1954.)

The principal question, then, in this case, is whether the reclassification of ' Attorney — Grade 4 ' in the Law Department of the city was done properly within the rule in *Matter of Cook* v. *Kern* (*supra*), or whether, in whole or in part, it falls afoul of the limitation expressed in *Matter of Williams* v. *Morton* (*supra*).

Put more concretely: Under the reclassification, was the assignment of new titles and new job descriptions, together with a reallocation of salaries, no more than a recognition of the facts as they existed (if validly within the then titles), with respect to those positions prior to reclassification? If so, the petition should be dismissed. Or, did the reclassification in fact reorganize the division by assigning new duties and responsibilities not carried, or not carried validly, by the incumbents or their positions prior to reclassification, and by conferring supervisory, superior status by way of title and higher salaries, thus create vacancies which, in ordinary course, must be filled by promotion and examination? If so, the petition is substantially sustained and some form of relief must eventually be awarded.

On the record, these issues may not be now resolved.

The record is incomplete. Only some of the persons involved, only some of the titles involved, and only some of the job descriptions involved, have been disclosed. In no instance has the underlying supporting data been supplied,—only argumentative or conclusory assertions. A hearing would appear necessary to determine the facts with respect to all of the persons and positions concerned.

In the conduct of such an inquiry, however, it is, generally, not the office of the court to take original evidence of the facts, either as they existed prior to reclassification, or as it is proposed they should exist subsequent to reclassification. This is a proceeding under Article 78. It concerns an administrative determination in the exercise of discretion, and such determination is sustainable if there be any rational basis for it. Put negatively: The court's power to review ceases if it appears that the action was neither arbitrary nor capricious; the court's function is not to redetermine the issue or to weigh the evidence the administrative agencies had before them. (*Matter of Meenagh* v. *Dewey,* 286 N. Y. 292, 306–307; *Matter of Levine* v.

*Connelly,* 267 App. Div. 796, motion for leave to appeal denied 267 App. Div. 926, 292 N. Y. 724; *Buckley* v. *Conway,* 270 App. Div. 1066.)

Consequently, all that need be developed upon a judicial inquiry is the basis upon which the several administrative agencies acted, at the time they acted, in promulgating the reclassification and reallocation. From the record we understand that this consists of the various studies made by the New York City Civil Service Commission, the supporting surveys made by Griffinhagen & Associates, the desk audits made of the various positions, and the several questionnaires which were returned with respect thereto. If these studies and related material supply a rational basis for the act of reclassification, that is the end of the matter. Support to sustain the agencies' action would be some evidence that the supervisory work to be done, by the persons to whom ranking positions have been assigned, was part of the work done by these persons prior to reclassification. In addition, it must appear that such supervisory work, which was done prior to reclassification, was within the titles and job descriptions provided for old Grade 4. Usually, the latter question could be determined, as a matter of law, simply by comparing the language of the titles and the job descriptions. In this instance, one hesitates to make such determination, because the language alone is not so clear, and the record is incomplete. It may, therefore, become relevant for the court to take evidence explaining or elaborating the meaning and effect of the old titles and the old job descriptions. In this connection, the factor of practical construction, over the years, may well prove to be significant. (Cf. *Matter of Kolb* v. *Holling,* 285 N. Y. 104, 112; *Ferraiolo* v. *O'Dwyer,* 302 N. Y. 371.)

Up to this point, one does not reach the question of the need for promotion examinations. If the reclassification is valid, then the incumbents of the old positions automatically move into the realigned positions. There is no vacancy, and, hence, there is no promotion required. (*Matter of Cook* v. *Kern,* 278 N. Y. 195, *supra.*) If, on the other hand, the reclassification is invalid because it is really a reorganization—creating new positions, not describing old duties but creating new ones—then vacancies are created. In such event they may not be filled, except by promotion examinations, unless there is a showing that such examinations are not practicable. (*Matter of Williams* v. *Morton,* 297 N. Y. 328, *supra.*) Once again, this record is insufficient to make a definitive holding. While both sides have adequately briefed the particular issue on the law, the basis for the finding by the city agencies that promotion examinations

were not practicable, is not sufficiently revealed, except, perhaps, for some partially conclusory assertions. Should this question become material on the hearing, then the city agencies may come forward with the record they had had before them in support of their exercise of discretion.

Accordingly, the order of Special Term should be modified by striking therefrom the injunctive provisions, and the order should be otherwise affirmed, the matter to be remitted for a hearing as to all of ' Attorney — Grade 4 ', but in accordance with the views expressed herein. Settle order.

FRANK J. (dissenting). In this article 78 proceeding, the petitioner seeks an order (1) prohibiting the corporation counsel from employing certain attorneys in the positions to which they have been classified unless the petitioner is designated to one of them; (2) directing the Civil Service Commission to hold a competitive examination, or in the alternative to certify the petitioner to the post of Principal Attorney (the highest grade as now established); (3) restraining the certification of the payrolls of three groups of attorneys unless the petitioner is included in the highest category.

Special Term made an order: (1) revoking and annulling the appointment of three groups of attorneys (previously certified and appointed) unless a competitive examination is held; (2) enjoining the assignments of the titles in dispute and the certification of payrolls; (3) directing a trial to determine whether the duties of the groups in question were higher than those attaching to a former classification.

The majority has modified the order by striking the injunctive provisions and has ordered a limited inquiry. I must dissent.

In 1948, the Citizens Budget Commission, in a report to the then Mayor of the City of New York, called attention to the inadequacy of existing civil service classifications, the lack of uniform salary grades, and many other defects in the classified service caused by the lack of co-ordinated planning. As a result, the Committee on Management Survey was created and supplied with funds to make a study of the entire civil service structure. A firm of professional public administration consultants was engaged and the committee, through many subcommittees, undertook an analysis of personnel practices in 59 departments and agencies and 11 cultural institutions in the city. After four years of study, a comprehensive plan was evolved and a general career and salary plan proposed. In 1954, the State Legislature, at the request of Mayor Wagner, enacted

laws empowering the city personnel director to make studies and recommendations to the Civil Service Commission for the purpose of establishing the program. From the foregoing it is evident that reclassification was not a scheme designed to favor a single employee, as was the situation in *Williams* v. *Morton* (297 N.Y. 328) upon which Special Term so heavily relied.

Without further detailing, it is sufficient to state that 125,000 city employees were included in the career and salary plan. Before grades, titles and salary levels were established, there were desk audits, on-the-job surveys, and consultations with department heads, the representatives of 130 employee organizations and an equal number of professional and civic bodies.

The employees of the law department of the city were reclassified as were those in other municipal offices. The petitioner, a member of the Bar employed in the law department, held a position as tax counsel, grade-4.

The majority opinion recites some of the salient facts, sufficient to obviate repetition here. It is necessary, however, to reiterate that the grade-4 status of lawyers was the highest in the prior classification and provided a minimum salary level but no maximum.

In adopting the career and salary plan, the Board of Estimate provided for a Board of Appeals to hear all protests and appeals on salary allocations. Thereafter, the Municipal Civil Service Commission specifically created an Appeals Board empowered to hear protests and appeals on the classification and reclassification of positions.

It is, therefore, manifest that in the very creation of the career and salary plan by the bodies and officials duly authorized to act, an administrative procedure was provided and adopted for the benefit and protection of any aggrieved person.

Although neither the petitioner nor the respondent has stressed the issue, the *amicus* brief filed by the Association of Reclassified Employees in the Civil Service of the City of New York does pose the question. I believe that the objection made to this proceeding upon the ground that the petitioner has failed to exhaust his administrative remedies is a valid one. It was for the purpose of determining inequities both in reclassification and in salary allocations that the appeal boards were created. The petitioner has seen fit to ignore his right to protest or appeal to the boards, has attempted to by-pass them and has initiated this article 78 proceeding without exhausting the remedy provided.

His failure to exhaust the administrative remedy bars this proceeding. (*Suppus* v. *Bradley,* 278 App. Div. 337, 339; *Metro-*

*politan Club* v. *Consolidated Edison Co.*, 276 App. Div. 1061; *People ex rel. Uvalde Asphalt Paving Co.* v. *Seaman,* 217 N. Y. 70; *Yakus* v. *United States,* 321 U. S. 414; *Hutchins* v. *McGoldrick,* 200 Misc. 964; *Ingber Realty Corp.* v. *Weintraub,* 5 Misc 2d 942; *Penfield* v. *Murray Hill Holding Corp.,* 281 App. Div. 675, affd. 306 N. Y. 602.)

Upon the adoption of the new classification and the assignment of new titles, pursuant to enabling State and city legislation, and civil service regulations, it must be presumed that the old positions were simultaneously abolished. The only right, therefore, the petitioner had under the Civil Service Law (§ 22) was to be transferred to a corresponding position which he was qualified to fill, at the same compensation. (Cf. *Matter of McNamara* v. *Holling,* 282 N. Y. 109; *Matter of O'Donnell* v. *Sinnott,* 266 App. Div. 176, 177.) The petitioner does not seek a restoration of his old position. Nor does he seek a transfer to a corresponding one, for that he received. Indeed, in the new classification, his salary was increased. In essence, he seeks to be placed in a grade higher than he formerly occupied.

In the old grade-4 legal positions, which had no salary ceiling, a number of employees had been designated to supervisory capacities at salaries substantially in excess of the minimum of $4,800 for the grade. In the reclassification, the grade-4 positions were subdivided into four groups and salaries fixed for each as follows:

| | | | |
|---|---|---|---|
| Attorney | $ 7,100 | to | $ 8,900 |
| Senior Attorney | 9,000 | to | 11,000 |
| Supervising Attorney | 10,300 | to | 12,700 |
| Principal Attorney | 11,200 | to | 13,600 |

These were established pursuant to chapter 354 of the Laws of 1954, and the resolution of the Board of Estimate hereinbefore referred to.

In July, 1956, following a survey by the Civil Service Commission which included individual desk audits, on-the-job surveys, examination of duties pertaining to the former titles, and office studies, the 139 grade-4 legal positions in the corporation counsel's office were reclassified into the four categories just enumerated, as follows: Attorney, 91; Senior Attorney, 25; Supervising Attorney, 13; Principal Attorney, 10. A similar over-all reclassification in the city of Buffalo was upheld (*Matter of Sippell* v. *Dowd,* 191 Misc. 558, affd. 274 App. Div. 1027). The city has a right to decide that services performed under one title would more appropriately fall under another (*Matter of Carr* v. *Kern,* 279 N. Y. 42, 47).

The petitioner was assigned to one of the 91 posts classified as attorney. He urges that he was entitled to a higher designation. In my view, he has utterly failed to demonstrate, either by his petition or by any supporting papers, a clear legal right to the relief sought. The fact that others in the same grade as the petitioner were assigned to more responsible duties, after the procedures hereinbefore outlined were followed, does not give to the petitioner the right to another position. (See *Matter of Sanger* v. *Greene,* 269 N. Y. 33; *Matter of Cook* v. *Kern,* 278 N. Y. 195, 199.) Moreover, if a vacancy occurs in any of the higher subdivisions, he is eligible for appointment without examination; so that, if otherwise qualified, a salary increase will automatically follow. His tenure, therefore, has not been affected (*Matter of Sugden* v. *Partridge,* 174 N. Y. 87), nor has he been classified out of office (*Matter of Sandford* v. *Finegan,* 276 N. Y. 70; *Matter of Fornara* v. *Schroeder,* 261 N. Y. 363, 368).

For the reasons herein set forth, I must dissent and vote to reverse the order and dismiss the petition.

RABIN, VALENTE and McNALLY, JJ., concur with BREITEL, J. P.; FRANK, J., dissents and votes to reverse the order and dismiss the petition in opinion.

Order modified by striking therefrom the injunctive provisions and otherwise affirmed, the matter to be remitted for a hearing as to all of " Attorney — Grade 4 ", but in accordance with the views expressed in the opinion herein.

Settle order on notice.