Fuld, J.
Disposition of these cases is controlled by our decision in Matter of Carolan v. Schechter (7 N Y 2d 980). It was there held that certain supervisors of park operations in the Park Department of the City of New York[1] had in effect obtained illegal promotions without competitive examination in violation of constitutional and statutory requirements (N. Y. Const., art. Y, § 6; Civil Service Law, § 61, subd. 2). We affirmed the order of the courts below requiring the Department of Personnel of the City of New York to discontinue assigning these employees to out-of-title duties.
The Carolan proceeding was commenced in 1955 and not decided by this court until 1960 (7 N Y 2d 980, supra). In the meantime, in 1956, as the result of a new “ Career and Salary Plan ” adopted in 1954 which reclassified civil service positions throughout the city, petitioner supervisors were “ slotted into ” the newly created title of “Assistant Park Director ”, a title designed to cover more adequately the job specifications and duties of their former positions as supervisors. Because of our decision in the Carolan case in 1960, respondent city officials decided that the petitioners could not retain their new titles *318 without passing a competitive examination and ordered that one be held. In these article 78 proceedings the courts below have decided that that determination was correct.
As is apparent from the Carolan case (5 Misc 2d 753, affd. 8 A D 2d 804, affd. 7 N Y 2d 980), the petitioners were performing impermissible out-of-title work prior to ‘1 reclassification ” under the career and salary plan. As supervisors of park operations, their duties, basically, were to direct and supervise the operation of a specific park facility, such as a swimming pool or a golf course, to supervise the employees under them and to perform related work. Three of the supervisors who are now the petitioners in the present Niebling case, however, were acting as park directors of an entire borough, another as an assistant director in the division of maintenance and operations and still another as an assistant to the director of maintenance and operations. The petitioners in the Boche case were designated as assistant borough directors performing “ administrative and inspectional duties.” All of these positions carried with them higher salaries, greater responsibilities and more prestige than the position of supervisor. Although the position of supervisor is ungraded and without salary limitation, this court held that the combination of higher pay, increased responsibility and prestige compelled the conclusion that the petitioners had actually received promotions without having taken the competitive examinations required by Constitution and statute. (Matter of Carolan v. Schechter, 7 N Y 2d 980, supra.)
The new career and salary plan, which was involved in Matter of Mandle v. Brown (5 N Y 2d 51), was adopted in 1954. The task of the Department of Personnel was to reclassify each civil service position under a “ standard title ” with an “ appropriate salary grade ” and then establish “ schedules of equivalent titles indicating in each case the former title of each position and the standard title and salary grade to which such position is classified and allocated” without “regard to out-of-title work performed by any incumbent thereof ” (N. Y. City Civ. Serv. Comm. Eules, rule XI). Position Classification Questionnaires — referred to as PCQs — were sent out to employees and on the job surveys were made to assist in reclassification. In cases such as the present, where positions had been “ ungraded ” and “ encom *319 passed a wide variety of duties ”, there were often several new titles in place of the single pre-plan one. In this way, the preplan position of supervisor was divided into several categories: (1) supervisor of park operations, (2) senior supervisor of park operations and (3) the totally new title of assistant park director, to which the petitioners herein were assigned.
The petitioners urge that, when they were “ slotted into ” their new titles, the Department of Personnel did not consider the out-of-title work which they were performing as supervisors and which we held in the Garolcm case involved an illegal promotion. Although there is some testimony to that effect in the record, a glance at the PCQs filled out by the petitioners and an examination of the testimony as a whole show that, in reclassifying the petitioners from the position of supervisor to the title of assistant park director, the Department of Personnel took into consideration the very duties which the court in the Carolan case had characterized and condemned as out-of-title work.[2] Obviously, reclassification may not be employed as a device to sanction the performance of out-of-title duties and thereby avoid the requirement of a competitive examination for promotion.
The present case is somewhat similar to that of Matter of Williams v. Morton (297 N. Y. 328), in which an examining physician, in Grade 4 of Civil Service, was designated as acting chief medical examiner of the New York City Board of Education at an increased salary without examination because of the war emergency. After the war, the board restored the doctor to his original Grade 4 status but, abolishing the position of chief medical examiner, placed him in charge of the medical staff at the same salary as he had been receiving as acting chief medical examiner. The court ruled that this action constituted an illegal promotion because of the failure to require a competitive examination, pointing out that “ Such an advance in income and *320 in professional responsibility and prestige is certainly a ‘ promotion ’ in every fair sense of that word ” (297 N. Y., at p. 334). And so, it is evident, is that of each of the petitioners in. the cases before us, both before and after this change of title.
The petitioners for their part attempt to equate their situation with that of the Grade 4 attorneys in Matter of Mandle v. Brown (5 N Y 2d 51, supra). In the Mandle case, however, these attorneys had, prior to reclassification, been validly performing functions of varying importance and receiving different salaries for their work. By their very nature, the duties to which they were assigned involved different degrees of competence, specialization and supervisory capabilities within the grade. But a reclassification of positions on the basis of out-of-title work was certainly not sanctioned. On the contrary, as the Appellate Division observed in the Mandle case (4 A D 2d 283, 286), “ If ‘ out-of-title ’ work was invalidly imposed upon or assumed by the incumbents prior to the reclassification, it may not be validated by a reclassification which is based thereon. This means that one may not deliberately manipulate a reclassification simply by first imposing or by assuming new duties and responsibilities, and then thereby avoid the necessity for filling vacancies by promotion by reclassifying the added duties and responsibilities.”
In the present case, unlike Mandle, the higher pay and heavier responsibilities of the petitioners did not grow out of the nature of their work as prescribed by the job specifications for supervisor of park operations. That position did not contemplate the performance of the out-of-title duties which the petitioners had acquired — those of park director, assistant director of maintenance and operations and the others. Nevertheless, the Department of Personnel, in its reclassification, continued to permit the petitioners to perform the duties of those positions, although it recognized that they were higher and more responsible than those of a supervisor. In other words, the department simply gave the petitioners the new title of assistant park director, arbitrarily equating it with that of supervisor, atid thereby enabled the petitioners to continue obtaining the benefits of higher salary and higher position without taking a competitive examination.
*321 The orders appealed from should he affirmed, with costs.
Chief Judge Desmond and Judges Die, Van Voorhis, Burke, Foster and Scheppi concur.
Orders affirmed.

. These supervisors are the petitioners herein. The petitioners in the Carolan ease were other supervisors who have at all times perform! in-title duties. Most of them are intervenors-respondents in the present proceedings.

. The PCQ of each of the petitioners contains a detailed description of their respective duties, not as supervisors, but as park directors, assistant borough directors, assistant director of maintenance and operations, and the like, with the weighty responsibilities and the important character of their work spelled out in full detail. And the assistant director of classification and compensation of the Department of Personnel specifically testified that she consulted and evaluated these PCQs in determining the reclassification to be accorded the petitioners herein.