KATHERINE M. DONEGAN et al., Appellants, v S. MICHAEL NADELL, as Chief Administrator, Office of Court Administration, State of New York, et al., Respondents.

Second Department, January 21, 1986

## APPEARANCES OF COUNSEL

*Joseph A. Faraldo, Faden & Goldmacher (Beth J. Gold-macher* of counsel), for appellants.

*Michael Colodner (John Eiseman* and *Barbara Zahler-Gringer* of counsel), for S. Michael Nadell, respondent.

*Robert Abrams, Attorney-General (David A. Smith* of counsel), for Harry G. Himber and others, respondents.

### OPINION OF THE COURT

NIEHOFF, J.

Although petitioner Donegan's situation appeals to our sense of equity, we agree with Special Term that it was not arbitrary and capricious for the Classification Review Board to have found that "the comparison of the former title specification for Court Assistant II with the new title standard for Principal Office Assistant provides a rational basis for the Chief Administrative Judge's decision of December 3, 1982" assigning her the new title of principal office assistant, a title which does not contain any mention of data entry or computer skills or duties. Hence, we affirm.

In October 1972 petitioner Donegan (hereinafter petitioner), who had commenced working for the Nassau courts in 1967 as a court office assistant, was promoted to the position of court assistant I. The written examination for that position had tested for skills, knowledge and abilities in the following areas: office practices, legal terminology, preparation of written materials, arithmetic, and understanding and interpretation of written material. No data-entry, computer or computer-related skills were tested. As determined by the title standard for that title, the in-title duties of a court assistant I encompassed a variety of clerical and typing duties including maintaining court record books, docketing court papers, answering routine inquiries, accepting papers for filing, collecting fees, participating in the preparation of statistical reports and training court office assistants. No data-entry, computer or computer-related skills were listed in the court assistant I title standard.

In 1973 a computer system was installed in the courthouse of the County Court, Nassau County. Petitioner was one of the individuals assigned to operate the computer. She used it to maintain the docket books.

In 1979 petitioner was promoted to the position of court assistant II, in which position she continued using a computer. The written examination for that position had tested for skills, knowledge and ability in the following areas: legal terminology, clerical aptitude and supervision. That examination did not test for any data-entry, computer or computer-related skills. As determined by the title standard for that title, the in-title duties of a court assistant II included: performing above court assistant I clerical work, answering inquiries from attorneys and litigants, interviewing complainants and litigants in order to prepare summonses, accepting papers for filing, accepting court fees, preparing court forms and routine statistical reports, and supervising a small clerical unit which performs entry-level duties. No data-entry, computer or computer-related skills are listed in the court assistant II title standard.

The State assumed court costs, effective April 1, 1977, and Judiciary Law § 39 (8) (a) called for the adoption of a new classification plan with the purpose of establishing a State-wide system of job titles and title standards. The new plan was adopted on May 28, 1979, and was effective retroactive to April 1, 1977.

Under the new classification plan, a set of uniform titles and job standards was created, setting forth the duties and responsibilities involved, and the knowledge, skills and abilities required to perform those duties and responsibilities. Title specifications for existing competitive titles, such as court assistant I and court assistant II, were "converted" to new titles in the classification plan where the duties and responsibilities and knowledge, skills and abilities set forth in the specifications for the former titles were comparable to those set forth in the title standards for the new titles.

Pursuant to the adoption of the new classification plan petitioner's former title of court assistant II was converted to the new competitive-class title of principal office assistant. The conversion was based upon a comparison of the in-title duties set forth in the former title specification for court assistant II and the in-title duties set forth in the new title standard for principal office assistant. Both titles are supervisory titles

whose duties are identical: the performance of clerical work and the preparation of court forms and court activity reports. The court assistant II title was the second level title in the former court assistant series of titles and the principal office assistant title is the second level title in the new office assistant series, which replaced the court assistant series. Neither title specification contains either data-entry or computer skills or duties.

On or about September 12, 1979, petitioner filed a notice of intent to appeal her classification. Petitioner alleged that her title of principal office assistant should be converted to senior data entry supervisor since that title included computer skills and duties and was more closely related to the duties she was performing as a court assistant II. Thereafter, on September 16, 1981 petitioner filed a grievance alleging that her performance of data-entry duties constituted out-of-title work in her title of principal office assistant.

During the pendency of petitioner's out-of-title work grievance, petitioner's position was reviewed pursuant to 22 NYCRR 25.5 and it was determined that the duties she was performing could properly be performed only by a data entry supervisor. As a result, petitioner's position (i.e., the duties she actually was performing) was reclassified to the title of data entry supervisor, and petitioner was provisionally appointed to that title effective November 18, 1982. However, petitioner was not eligible for permanent appointment to the title of data entry supervisor, because she was not on an eligible list for that title. The competitive examination for that title had been administered in May 1981 but petitioner had not taken the examination.

By determination dated December 3, 1982, Chief Administrative Judge Evans denied petitioner's classification appeal stating: "The Classification Plan provides that where a title specification was available for former competitive and non-competitive titles, a conversion from a former title to a new title was made where the duties and responsibilities and knowledge, skills and abilities set forth in the former title specification were comparable to those set forth in the new title standard".

On December 9, 1982, petitioner's out-of-title grievance was granted, in part, by Carolyn Wright Hopkins, Assistant Director of Employee Relations. Hopkins determined that petitioner's then current duties were best described in the title

standard for data entry supervisor and that, therefore, petitioner was performing out-of-title duties in her position as principal office assistant. As a result of the decision, petitioner was awarded compensation for the out-of-title duties she performed but she was ordered to immediately cease any out-of-title work. In the meantime, as stated above, petitioner had received a provisional appointment to the data-entry title encompassing those same out-of-title duties. As a consequence of that appointment, the directive in the grievance determination became moot.

As noted earlier, on appeal the Classification Review Board found a rational basis for Judge Evans' action in classifying petitioner as principal office assistant.

This CPLR article 78 proceeding followed. In her petition, petitioner alleges that her classification as principal office assistant was made arbitrarily and capriciously in that it was made without consideration of the actual duties performed by her, namely, computer-related functions. She further alleges that had her actual duties been properly evaluated, she would have been classified as a data entry supervisor.

As relief, petitioner requests, *inter alia,* that the Chief Administrative Judge be directed to classify her as a data entry supervisor nunc pro tunc to the time of the State's takeover.

Special Term dismissed the petition. It found that the reclassification of petitioner's title was in accordance with both Judiciary Law § 39 (8) (a) and 22 NYCRR 25.45 (a), which require that classification be "in accordance with duties required to be performed in title". Finally, Special Term concluded that "although * * * DONEGAN regularly performed out-of-title work with electronic data equipment, such could not be considered as a basis for reclassification".

This appeal followed.

In our view, Justice Kutner at Special Term was eminently correct in holding that the Chief Administrative Judge had not acted arbitrarily and capriciously when he refused to permanently classify the petitioner as a data entry supervisor.

An administrative determination concerning the classification of a civil service position is subject to limited judicial review. The petitioner has the burden of showing that the determination sought to be reviewed was arbitrary, capricious or affected by an error of law. Where there is a fair and reasonable ground for difference of opinion as to classification,

the court will not interfere with the judgment of the administrative body or officer *(Matter of Dillon v Nassau County Civ. Serv. Commn.,* 43 NY2d 574, 580-582; *Matter of Grossman v Rankin,* 43 NY2d 493, 503-506).

We are satisfied that, as a *matter of law,* the petitioner was not working in title when she performed computer work. However, assuming, arguendo, that the issue cannot be resolved as easily or as quickly as we would resolve it, at least, or so it seems to us, reasonable persons can differ as to whether or not she was working in or out of title. If that be so, Judge Evans' decision cannot be overturned as having been reached arbitrarily. We turn now to an analysis of the law and facts.

Judiciary Law § 39 (8) (a) provides in relevant part: "8. (a) The administrative board of the judicial conference shall adopt a classification structure for all non-judicial officers and employees who become employees of the state of New York pursuant to this section *which shall provide for the classification of positions in accordance with duties required to be performed in title in these positions and in accordance with the responsibilities of the position and the volume of work in the court or court-related agency in which the position exists"* (emphasis supplied).

22 NYCRR 25.45 (a) similarly provides in relevant part: "25.45 Classification plan pursuant to section 39 of the Judiciary Law. (a) The Chief Administrator of the Courts shall establish a classification plan for the positions of all nonjudicial officers and employees of the unified court system who become employees of the State of New York pursuant to section 39 (formerly section 220) of the Judiciary Law, which shall provide for the classification of positions *in accordance with duties required to be performed in title in these positions, and in accordance with the responsibilities of the position and the volume of work in the court or court-related agency in which the position exists"* (emphasis supplied).

Both Judiciary Law § 39 (8) (a) and 22 NYCRR 25.45 (a), under which Judge Evans acted, state that "classification of positions [shall be] in accordance with duties required to be performed in title in these positions".

Under the new classification plan, as well as the former classification plan, sets of uniform titles and title standards were established. The title standard for each competitive title sets forth the duties and responsibilities involved, and the

knowledge, skills and abilities that are required to perform those duties and responsibilities. Thus, the title standard defines the in-title duties of the particular title, and it is the knowledge, skills and abilities necessary to perform those duties which are tested in the competitive examination for that title. As the Court of Appeals stated in *Matter of Gavigan v McCoy* (37 NY2d 548, 551): "Determinative of what duties are properly performed within any given title *are the job specifications for that title*" (emphasis supplied).

Common sense as well as the law (Judiciary Law § 39 [8] [a]; 22 NYCRR 25.45 [a]) dictate that a "conversion" of titles be based upon the in-title duties set forth in a title standard. As a corollary of that principle it follows that actual duties performed are not criteria to be considered and are not to be examined. That is, title reclassification made by a conversion procedure are to be based upon a comparison of the duties set forth in the title standards for both the existing titles and the new titles, and not by looking to the duties actually imposed or assumed.

In *Matter of Goldhirsch v Krone* (18 NY2d 178, 185), the Court of Appeals wrote:

"Quoting from the opinion of the Appellate Division in *Matter of Mandle* v. *Brown* (4 A D 2d 283, 286, affd. 5 N Y 2d 51), the court wrote: "'If 'out-of-title' work was invalidly imposed upon or assumed by the incumbents prior to the reclassification, it may not be validated by a reclassification which is based thereon. This means that one may not deliberately manipulate a reclassification simply by first imposing or assuming new duties and responsibilities, and then thereby avoid the necessity for filling vacancies by promotion by reclassifying the added duties and responsibilities'" (12 N Y 2d, at p. 320).

"Similarly, in the case before us, even though no 'deliberate' manipulation was involved, any counseling duties which the Goldhirsch petitioners were performing did not constitute in-title work. They may not, therefore, obtain a reclassification of their positions to those of Employment Counselor and Senior Employment Counselor without taking a promotional examination".

And, in *Matter of Gavigan v McCoy (supra,* at pp 550-551), the Court of Appeals stated: "For the past 25 years, this court has consistently held that the performance of out-of-title duties creates no right to reclassification to a new position

involving those duties * * * Out-of-title duties are duties 'not properly subsumed under the title and description of the old position'" *(see also, Matter of Ainsberg v McCoy,* 26 NY2d 56 [out-of-title work is forbidden to be used as a basis for reclassification]; *Matter of Niebling v Wagner,* 12 NY2d 314).

In short, in-title duties are determined by the job specifications, and duties which are not in title by that standard are out of title.

That being so, it seems clear that the decision to reclassify petitioner as principal office assistant by comparing the job specifications for that title with her county-held title of court assistant II (rather than by looking at the duties she was actually performing) can hardly be said to be arbitrary and capricious. On the contrary, it appears that it would have been improper to have reclassified petitioner by taking into account duties not contained in the job specifications for court assistant II simply because the county had imposed out-of-title work upon petitioner during her tenure as a county employee.

What, then, are the duties of the two titles?

The title of data entry supervisor, which petitioner seeks as a permanent title, encompasses extensive computer duties and skills including knowledge of data-entry procedures, operation of an alpha-numeric keyboard at an entry rate of 8,000 keystrokes per day, review and correction of computer errors, disposition of source documents which have been entered into the computer, key-verification of data already entered into the computer, review and interpretation of computer errors, and entry of computer data into a keyboard device. Incumbents in the data entry supervisor title must also be able to train and supervise data-entry personnel and participate in the development of data-entry procedures.

In contrast, the court assistant II title is devoid of *any* data-entry skills or duties, much less supervisory duties relating to training of data-entry skills. Court assistants II perform a variety of clerical duties, respond to inquiries from attorneys and litigants, accept papers filed with the court, receive and acknowledge payment of court fees and fines, prepare statistical reports, and may supervise other clerical employees.

Thus, there is no real correlation between the titles of court assistant II and data entry supervisor.

Nor can data-entry duties be said to be a natural outgrowth of clerical duties with advanced technology merely replacing older manual methods for performing docketing duties. Cleri-

cal-entry duties and computer-entry duties are distinctly different, each requiring a different set of unrelated skills which, in turn, require different training, different experience and entirely different examinations. In fact, these titles are so different that when the new classification plan was developed, an entirely separate title series was created, containing several titles whose incumbents perform only data-entry duties, including data entry clerk (JG 7), data entry control clerk (JG 11), and data entry supervisor (JG 13). The title requested by petitioner is data entry supervisor, which must supervise the lower-level titles—all of which perform data-processing duties that are not contained in any of the titles of the office clerical series, including court assistant II. To repeat, because the court assistant II title contained no data-entry duties, petitioner's performance of such duties could not constitute in-title work and could not form a basis for conversion or reclassification.

Not only is the title specification for court assistant II devoid of any data-entry duties, but the written examination given for that title which petitioner passed did not test for any data-entry, computer or computer-related skills. Inasmuch as the skills involved in the data-entry duties which petitioner alleges she performed as a court assistant II were not tested for in the competitive examination for that title, she can hardly be deemed to have validly performed those duties in title.

It should be noted that in 1973 while she was still employed by the county, petitioner and other computer operators requested the county to change their classification from the court assistant series to computer operator II. Thus, as far back as 1973, petitioner herself recognized that she was not working in title, i.e., was working out-of-title, *because the duties she was performing came within the specifications of a title other than the one she was holding.* According to petitioner's statement, contained in the record, the county failed to take any action on her grievance or request for reclassification. However that may be, the county's inaction cannot ripen into a vested right of petitioner to perform such duties as a data entry supervisor, now that the State has become her employer, in the face of the inescapable fact that she was never tested by competitive examination to establish her skills to perform the duties of a data entry supervisor. Her on-the-job, out-of-title training is not treatable as a valid substitute

for a civil service examination any more than it is so treatable for a provisionally appointed employee.

We also note that after the State became her employer, petitioner again implicitly conceded that the data-entry duties she performed were not in-title functions but constituted out-of-title work. When she brought the out-of-title work grievance, after the State assumed the costs of her employment, petitioner specifically alleged that the data-entry duties she was performing and had been performing prior to her reclassification, were out-of-title duties in her title of principal office assistant. The Assistant Director of Employee Relations determined that she was correct. That is, that the data-entry duties did constitute out-of-title work for the principal office assistant title. Accordingly, petitioner was directed to cease performing those duties. Since the principal office assistant title covers the same duties as the court assistant II title, it would appear to follow that even petitioner realizes that she was not working in title when she performed computer duties.

However that may be, petitioner contends that there existed two subclasses under the court assistant title series, one group consisting of those persons who performed their docket-entry duties manually and a second group which made the same entries but performed them by computer, and that each subclass had to be assigned a new title which "incorporates and * * * 'matches' the tasks performed before reclassification". That contention lacks merit. The relevant features for title classification purposes are whether the duties are the same *as defined by the skills needed to perform those duties,* not whether the end product of a set of duties may be related. One cannot simply say that since both positions involve docket keeping, workers may be shifted in and out of the titles without an examination. The essence of competitive civil service is whether the person to be performing a function has passed an examination which tests knowledge of required skills in a manner permitting competitive ranking with others who possess like skills. The clerical skills of a court office clerk are not the computer-related skills of a data-entry clerk, and the merit and fitness provision of the State Constitution would be circumvented if an employee were to be permitted to obtain a title for data-entry duties without competing against others in an examination testing the separate skills required for that title. To us, the conclusion is unavoidable that if data-entry skills were not tested by competitive examination, data-

entry duties could not have been performed within the court assistant II title, either as a subclass or otherwise.

The fact that the county may have called upon petitioner to use skills and perform functions not specified in her job title and for which she had not been tested by examination, could not work as an estoppel against the Chief Administrative Judge whose obligation it was to classify the State positions on the basis of the duties required to be performed *in title* in such positions. If a civil servant is assigned functions not prescribed in the job specifications for her position, her remedy is to file a grievance. Petitioner did file a grievance in this case after the State reclassified her and she was granted payment for the difference between the respective grades while she was in the State's employ.

Our dissenting colleague lays much stress on the case of *Matter of Cook . v Kern* (278 NY 195). That case, which deals with a rather unique set of facts, cannot be read as authority for the imposition of an estoppel against the Chief Administrative Judge whose obligation it was to classify the State position on the basis of the duties required to be performed *in title* in such positions.

In sum, it cannot be said that the Chief Administrative Judge acted arbitrarily and capriciously when he determined that petitioner's former title of court assistant II was to be converted to the new title of principal office assistant on the basis of a comparison of the in-title duties set forth in the former title specification for court assistant II and the in-title duties set forth in the title standard for principal office assistant.

Accordingly the judgment appealed from should be affirmed, without costs or disbursements.

KUNZEMAN, J. (dissenting). Petitioner Donegan commenced working for the Nassau County Court in 1967 as a court office assistant. Upon passing the promotional exam for court assistant I, she was promoted to that title, effective October 6, 1972.

In 1973 a computer system was installed in the courthouse of the Nassau County Court. Donegan was one of the individuals assigned to operate the computer. At that time, the Nassau County court system had no job specifications containing computer duties because the most recent specifications were adopted in 1967, long before the court acquired the computer system. Donegan continued to maintain the docket books (an

in-title duty); however, she performed that task by computer rather than by hand. Shortly after being assigned computer duties, Donegan petitioned the State Judicial Conference to adopt a new classification to cover the computer duties she was performing. For reasons unclear from the record, no action was taken.

Upon passing the promotional exam for court assistant II, Donegan was appointed to that title, effective January 18, 1979. As a court assistant II, she was assigned as a supervisor in the court's computer room.

Pursuant to the State's assumption of court costs, effective April 1, 1977, Judiciary Law § 39 (8) (a) called for the adoption of a new classification plan with the purpose of establishing a State-wide system of job titles and title standards. The new plan was adopted on May 28, 1979, and was effective retroactive to April 1, 1977.

On August 1, 1979, pursuant to the new classification plan, Donegan's former title of court assistant II was assigned the new title of principal office assistant, the job specifications of which new title did not contain any mention of data-entry or computer skills or duties.

On or about September 12, 1979, Donegan filed a notice of intent to appeal the new classification. She alleged that her position should have been classified as a senior data entry supervisor rather than a principal office assistant since the title of senior data entry supervisor included computer skills and duties and was more closely related to the duties she had performed as a court assistant II.

During the pendency of the appeal, Donegan's job line was reclassified from one which could properly be performed by a principal office assistant to one which could only be performed by a data entry supervisor. Donegan was provisionally appointed to the title of data entry supervisor.

By letter dated December 3, 1982, Donegan was notified that her classification appeal for the reclassification of her former title of court assistant II to a higher title was denied. By examining title specifications for court assistant II and principal office assistant, Chief Administrative Judge Herbert B. Evans concluded that the duties and responsibilities in both positions were comparable and refused to reclassify Donegan. In reaching that determination, however, Judge Evans made no mention of Donegan's claim that she should be reclassified as a senior data entry supervisor. Instead, Judge Evans dis-

cussed reasons why Donegan could not be reclassified to the position of senior court clerk, relief she never even requested.

Donegan appealed Judge Evans' determination to the Classification Review Board which issued its determination on July 14, 1983. The Board found that "the comparison of the former title specification for Court Assistant II with the new title standard for Principal Office Assistant provides a rational basis for the Chief Administrative Judge's decision of December 3, 1982". Donegan's appeal was therefore dismissed.

In a petition dated August 1, 1983, Donegan, joined by the president of her collective bargaining unit, alleged that her classification as principal office assistant was made arbitrarily and capriciously in that it failed to take into consideration the actual duties performed by her, namely, computer-related functions. Petitioners further alleged that had Donegan's actual duties been properly evaluated, she would have been classified as a data entry supervisor.

Special Term dismissed the petition, finding that the petitioners had failed to demonstrate that the Board's determination was arbitrary or capricious. In doing so, it relied upon the rule that: "The performance of duties out-of-title, that is duties not properly subsumed under the title and description of the old position, creates no right to reclassification to new positions involving those forbidden to be used as a basis for reclassification" (*Matter of Ainsberg v McCoy,* 26 NY2d 56, 59; *see also, Matter of Gavigan v McCoy,* 37 NY2d 548, 551; *Matter of McGuinness v New York State Off. of Ct. Admin.,* 96 AD2d 561, 563, *affd* 61 NY2d 279).

Although the title specifications for court assistant II did not include any computer-related duties, under the circumstances of this case the duties performed by Donegan cannot be deemed out of title and respondents' failure to reclassify Donegan as a data entry supervisor was therefore arbitrary and capricious.

The situation here is like that which existed in *Matter of Cook v Kern* (278 NY 195), and should be accorded similar treatment. In *Cook* certain Department of Sanitation employees had been performing the duties of "stationary engineer in charge", although no such formal position had been created by law. "Many years" later, in May 1936, a new classification of that title was created and a promotional examination held. The Court of Appeals found that all the original stationary engineers in charge "had obtained valid original appointments

as stationary engineers, and when, prior to May, 1936, additional duties were imposed and increased emoluments conferred upon them under their departmental designation as 'Stationary Engineers in Charge,' there were no promotion examinations to be taken and no eligible lists from which appointments could be made" *Matter of Cook v Kern, supra,* at p 199). The court held that, "[h]aving received original valid appointments, they have the right to remain in their positions, even though a new classification has been effected and new requirements exacted" *(Matter of Cook v Kern, supra,* at p 199).

Similarly, here Donegan lawfully occupied the position of court assistant I. When the additional computer duties were imposed upon her there were no promotional exams to be taken for a position encompassing those duties. Furthermore, the State Judicial Conference failed to respond to Donegan's efforts to create a new title. It was not until some six years later, when the State-wide classification plan was adopted, that a title encompassing Donegan's computer duties first came into existence. Therefore, the State should now be estopped from claiming that Donegan's computer duties were out of title to her position of court assistant II.

In this respect, it is noteworthy that such a result would not be inconsistent with an agreement between the State of New York Unified Court System and the Court Officers Benevolent Association of Nassau County. Pursuant to that agreement, certain standards were established for determining whether an employee was performing out-of-title duties:

"[A]n employee grievant shall be determined to be working out-of-title unless

"(a) The duties alleged to be out-of-title work are normally performed by employees in the grievant's title and are not described in the class specifications for another title; or

"(b) The duties are reasonably related to the duties described in the class specifications for the grievant's title; or

"(c) The duties are new duties which are a reasonable outgrowth of duties usually performed by employees in the grievant's title."

Donegan was performing the same duties as required of a court assistant II, except that she was performing them by computer rather than by hand. Since computer duties were not described in the class specifications for any other title, the above standards would mandate a determination that Done-

gan's computer duties were in title. Similarly, the Court of Appeals has held that work will not be considered out of title if the heavier responsibilities grew out of the nature of the work as prescribed by the job specification *(Matter of Goldhirsch v Krone,* 18 NY2d 178, 184-185; *Matter of Niebling v Wagner,* 12 NY2d 314, 320; *Matter of Mandle v Brown,* 5 NY2d 51).

I disagree with the majority's statement that by bringing the out-of-title work grievance Donegan implicitly conceded that the data-entry duties she performed were not in-title functions but constituted out-of-title work. Donegan's grievance was directed towards the performance of computer duties within the State-wide classification system. Clearly, and it was so found, since there were job specifications in the State system which included the same computer duties being performed by Donegan, her performance of these duties, which were not included within her new title of principal office assistant, were out of title. However, nowhere does Donegan concede that the computer duties were out of title to her county title of office assistant II.

In conclusion, the circumstances of this case make it one which is ripe for consideration of "the realities which obtained in the operation of the agency prior to reclassification" *(Matter of Mandle v Brown,* 4 AD2d 283, 286, *affd* 5 NY2d 51, *supra).*

Accordingly, I vote to reverse the judgment appealed from, annul the determination of the respondent Classification Review Board, and grant the petition to the extent of directing the respondents to classify the title of the petitioner Donegan's position as a data entry supervisor.

THOMPSON, J.P., and RUBIN, J., concur with NIEHOFF, J.; KUNZEMAN, J., dissents and votes to reverse the judgment appealed from, annul the determination of the respondent Classification Review Board, and grant the petition to the extent of directing the respondents to reclassify the title of petitioner Donegan's position to that of data entry supervisor.

Judgment of the Supreme Court, Nassau County, entered January 17, 1984, affirmed, without costs or disbursements.