[904 NE2d 826, 876 NYS2d 690]

In the Matter of ANDREW S. CRISCOLO et al., Appellants, v NICH-
OLAS J. VAGIANELIS, as Director of the Division of Classifica-
tion and Compensation of the Department of Civil Service,
et al., Respondents.

Argued January 14, 2009; decided February 24, 2009

## POINTS OF COUNSEL

*Edward J. Aluck,* Albany, and *William P. Seamon* for appellants. Respondents have not articulated a rational basis for revising the classification standards for the titles of education supervisor, plant superintendent and assistant industrial superintendent to require such employees to preside as hearing officers over tier III inmate disciplinary hearings. Therefore, the Appellate Division's memorandum and order upholding the revised classification standards was in error and should be reversed by this Court. (*Matter of Montero v Lum,* 68 NY2d 253; *Matter of O'Reilly v Grumet,* 308 NY 351; *City of Newburgh v Potter,* 168 AD2d 779; *Cove v Sise,* 71 NY2d 910; *Matter of Haubert v Governor's Off. of Empl. Relations,* 284 AD2d 879; *Matter of Gajewski v Angello,* 301 AD2d 721; *Matter of C.S.E.A. v County of Dutchess,* 6 AD3d 701; *Matter of Roche v Wagner,* 34 Misc 2d 920, 18 AD2d 647, 12 NY2d 885, 314; *Matter of Charles A. Field Delivery Serv. [Roberts],* 66 NY2d 516; *Matter of Montauk Improvement v Proccacino,* 41 NY2d 913.)

*Andrew M. Cuomo, Attorney General,* Albany (*Julie Sheridan, Barbara D. Underwood, Andrew D. Bing* and *Peter H. Schiff* of counsel), for respondents. The extensive analysis that the Division of Classification and Compensation of the State Department of Civil Service conducted provided a rational basis to revise the classification standards at issue to include the duty of conducting inmate disciplinary hearings. (*Matter of Benson v Cuevas,* 272 AD2d 764, 95 NY2d 760; *Matter of Association of Secretaries to Justices of Supreme & Surrogate's Cts. in City of N.Y. v Office of Ct. Admin. of State of N.Y.,* 75 NY2d 460; *Cove v Sise,* 71 NY2d 910; *Matter of Woodward v Governor's Off. of Empl. Relations,* 279 AD2d 725; *Matter of Carolan v Schechter,* 7 NY2d 980; *Matter of Niebling v Wagner,* 12 NY2d 314; *Matter of Gavigan v McCoy,* 37 NY2d 548; *Matter of Kuppinger v Governor's Off. of Empl. Relations,* 203 AD2d 664; *Matter of Collins v Governor's Off. of Empl. Relations,* 211 AD2d 1001; *Matter of Loehr v Governor's Off. of Empl. Relations,* 3 AD3d 653.)

## OPINION OF THE COURT

READ, J.

Inmates incarcerated in prisons operated by the New York

State Department of Correctional Services (DOCS) must comply with standards of conduct (7 NYCRR part 270), which are enforced through issuance of inmate misbehavior reports in those instances where a rule violation endangers life, health, security or property (7 NYCRR 251-3.1). These reports are subject to review at an administrative hearing at which a hearing officer determines the truth of the allegations and imposes penalties accordingly. There are three levels of these administrative hearings—tier I (violation hearing), tier II (disciplinary hearing) and tier III (superintendent's hearing)—with differing requirements for each (7 NYCRR 270.3; 7 NYCRR parts 252, 253, 254).

Tier III hearings, which address the most serious inmate misbehavior implicating the most severe punishment (7 NYCRR 251-2.2 [b] [3]), may be conducted by the superintendent of the correctional facility, the deputy superintendent, a captain, a commissioner's hearing officer employed by DOCS's central office, or "some other employee" designated by the correctional facility's superintendent "in his or her discretion" (7 NYCRR 254.1). On this appeal, we conclude that it was not irrational for the Division of Classification and Compensation (the Division) of the New York State Department of Civil Service (DCS) to revise the classification standards for the civil service titles of education supervisor, plant superintendent (B and C) and assistant industrial superintendent (A and B) so as to require DOCS employees in these titles to conduct tier III hearings at a superintendent's behest.

I.

DOCS employees occupying positions in these civil service titles began conducting tier III hearings at least as early as the late 1990s; however, this particular work was not listed in the classification specifications and duties for the titles at that time. Consequently, in 1998, the New York State Public Employees Federation (PEF), the union representing the DOCS employees, grieved the assignment of tier III hearing work to them. In 2001, additional grievances were filed to protest this practice. Also in 2001, the Appellate Division concluded that there was no rational basis for DOCS's decision to assign tier III hearing work to an employee in the title of senior correction counselor. This was because "presiding over quasi-judicial adversarial proceedings, hearing and receiving evidence, making appropriate findings of fact and conclusions of law and imposing punish-

ment simply [could not] be said to be reasonably related to or viewed as a logical extension of" the employee's primary duty of counseling inmates, as set out in the Division's specifications for this position (*see Matter of Woodward v Governor's Off. of Empl. Relations*, 279 AD2d 725, 727 [3d Dept 2001]).

In August 2006, the Governor's Office of Employee Relations (GOER) sustained the 1998 and 2001 grievances, and directed DOCS to "cease and desist from" assigning tier III hearing work to employees in the civil service titles at issue here. GOER acted upon the Division's determination that conducting tier III hearings constituted out-of-title work for these employees "based upon . . . review of the subject grievance[s] within the context of those applicable New York State Classification Standards *in effect when the grieved work was performed and the grievance[s were] filed*" (emphasis added). In making its determination, the Division recognized that the tier III hearing work assigned to these DOCS employees was routine in nature, and did not make up the bulk of their job duties and responsibilities, or consume a great deal of their working time; and that the employees received training and written materials with step-by-step instructions.

In conjunction with its consideration of the 1998 and 2001 grievances, the Division engaged in what it describes as a long overdue and comprehensive analysis and evaluation of the civil service titles in question, the classification specifications for which had not been updated for at least 25—and in some cases as many as 40—years. As part of this analysis and evaluation, the Division examined the tier III hearing process as well as the nature of informal hearings conducted at other executive branch agencies; reviewed and compared the specific job duties of employees (both attorneys and non-attorneys) who conduct informal hearings; and specifically looked at the job duties of an inmate disciplinary hearing officer (IDHO) (M-1), a civil service title unique to DOCS. IDHOs, who must be licensed attorneys, preside over the most complex tier III hearings, and also carry out specialized managerial, policymaking and appellate review functions. There are only 10 IDHOs statewide, all of whom work out of DOCS's central office.

The Division concluded that "within the universe of administrative adjudicatory hearings, Tier 3 Hearings are, in general, less formal, more routine, and less complex." Inmates are not represented by counsel, have limited rights to call and may not cross-examine witnesses. Briefs and memoranda of law are gen-

erally not submitted; decisions are usually issued in a short, standardized form. Observing that "[n]ot all Tier 3 Hearings are of equivalent complexity," the Division found that, in practice, DOCS "limit[ed] the assignment of non-attorney personnel to those less complex Tier 3 Hearings which are considered to be 'routine', without involved, difficult, or unusual questions of fact or law, and which will not set precedent." Further, "DOCS non-attorney personnel . . . only conduct[ed] Tier 3 Hearings after appropriate training by an [IDHO] or other appropriate DOCS personnel"; their decisions were subject to administrative and judicial review.

Finally, the Division identified "a core set" of knowledge, skills, and abilities that every non-attorney conducting a routine tier III hearing needed to possess. The Division concluded that the requisite knowledge, skills and ability were general in nature, consisting of, for example, knowledge of the standards of inmate behavior, and the ability to understand written instructions, guidelines and procedures and to communicate clearly both orally and in writing. As a result, many DOCS employees were qualified, with training, to conduct a tier III hearing, including employees holding positions in the civil service titles at issue in this litigation.

In October 2006 the Division amended the classification specifications for these titles to bring them into line with its analysis and evaluation. The following task was added under the heading "ILLUSTRATIVE DUTIES": "May assist with, conduct, and/or make determinations on inmate disciplinary hearings." In implementing this new classification specification, the Division, in practice, adopted limitations identified in the 1998 and 2001 grievances: non-attorney DOCS employees were only to conduct routine tier III hearings after being trained and with proper supervision, and this work was not to be their primary duty.

In January 2007, petitioners commenced this CPLR article 78 proceeding in Supreme Court, alleging that the Division's revision of their civil service titles to include tier III hearing work was arbitrary and capricious because they were not educated or trained to carry out this task, which, in any event, conflicted with the primary functions and duties of their positions. They also contended that the revision was contrary to GOER's disposition of the 1998 and 2001 grievances, and the Appellate Division's decision in *Woodward*. According to petitioners, tier III hearing work should be confined to employees occupying

positions as hearing officers (grade 25), a civil service title found in other state agencies, or to IDHOs. Both titles require admission to the New York State Bar as a job qualification.

On May 15, 2007, Supreme Court dismissed the petition. In light of the limited standard of judicial review, the court concluded that "[t]he addition of the duty of conducting inmate disciplinary hearings to the disputed job titles is not wholly irrational or without rational basis considering the other duties of those titles" (19 Misc 3d 1118[A], 2007 NY Slip Op 52550[U], *6 [2007]). The Appellate Division, with two Justices dissenting, subsequently affirmed (*Matter of Criscolo v Vagianelis*, 50 AD3d 1283 [3d Dept 2008]).

Noting the highly deferential standard of review and the "comprehensive study and analysis" that "undergirded" the Division's revisions, the Appellate Division was "unpersuaded" that these classification determinations could be "characterized as wholly arbitrary or without any rational basis" (*id.* at 1285). Further, the court distinguished *Woodward* on the ground that the conflict faced by senior correction counselors—between counseling inmates and weighing their credibility in a tier III hearing that might result in punishment—was not present in the civil service titles at issue. The dissenters faulted the Division for "utiliz[ing] reclassification as a means of validating out-of-title work" (*id.* at 1286), citing *Matter of Gavigan v McCoy* (37 NY2d 548, 552 [1975]), *Matter of Niebling v Wagner* (12 NY2d 314, 319 [1963]), and *Matter of Mandle v Brown* (4 AD2d 283, 286 [1st Dept 1957], *affd* 5 NY2d 51 [1958]). Petitioners appealed to us as of right (CPLR 5601 [a]), and we now affirm.

## II.

As the lower courts recognized, "[a]dministrative determinations concerning position classifications are . . . subject to only limited judicial review, and will not be disturbed in the absence of a showing that they are wholly arbitrary or without any rational basis" (*Cove v Sise*, 71 NY2d 910, 912 [1988]). Here, the Division demonstrated a rational basis for adding tier III hearing duties to the civil service titles at issue.

Before revising the classification standards, the Division analyzed the tier III hearing process; the knowledge, skills and abilities required to conduct these hearings; and the knowledge, skills and abilities required for the identified civil service titles, each of which requires the performance of administrative, supervisory, and managerial tasks, good communication skills,

and decisionmaking on issues of consequence to DOCS, including the operation of the physical plant and industrial and educational programs. We cannot say that the Division acted irrationally when it decided that tier III hearing work was no more complex than duties already encompassed within these titles, and that employees in these titles were qualified to conduct tier III hearings.

As petitioners point out, the Appellate Division in *Woodward* (involving a title no longer at issue in this litigation) and the Division and GOER in their disposition of the 1998 and 2001 grievances found that tier III hearing duties comprised out-of-title work. These decisions were, however, based on the content of the classification specifications then in effect for the titles at issue. The Division may always rework classification specifications to reflect management's needs and available resources; a prior finding of out-of-title work does not foreclose the Division from revising a classification specification to include this work, so long as its decision to do so is rationally based. And here, there was a demonstrable need for suitable non-attorney hearing officers at DOCS: while there are thousands of tier III hearings that need to be scheduled and completed on a timely basis each year, many of them run-of-the-mine and lacking precedential value, the number of IDHOs is limited. Given these realities, DOCS must assign tier III hearing work to employees who possess—or could successfully obtain with proper instruction and guidance—the knowledge, skills, and abilities necessary to carry out this task.

Finally, *Gavigan*, *Niebling*, and *Mandle* do not call for a different result. The New York Constitution and the Civil Service Law require that promotions be made after competitive examination (*see* NY Const, art V, § 6; Civil Service Law §§ 44, 52). In these cases, we pointed out that "reclassification may not be employed as a device to sanction the performance of out-of-title duties *and thereby avoid the requirement of a competitive examination for promotion*" (*Niebling*, 12 NY2d at 319; *see also Gavigan*, 37 NY2d at 552 ["one may not deliberately manipulate a reclassification simply by first imposing or by assuming new duties and responsibilities, *and then thereby avoid the necessity for filling vacancies by promotion* by reclassifying the added duties and responsibilities" (quoting *Mandle*, 4 AD2d at 286 [emphasis added])]). In *Gavigan*, we explained why, despite the general flexibility given to agencies in reclassifying civil service positions, certain reclassifications have been held invalid:

"For over 75 years it has been the avowed purpose of civil service laws to promote the good of the public service; and it should be readily apparent that the well-established rule we enforce today (as it has been for decades) is designed to and does safeguard the graded positions of civil service *and thus insulates their status from political manipulation*" (37 NY2d at 552-553 [emphasis added and citations omitted]).

In short, *Gavigan*, *Niebling* and *Mandle* stand for the proposition that an employee cannot achieve a higher grade or salary by being assigned or engaging in out-of-title work because this would violate the fundamental civil service tenet of advancement through competitive examination. That is not what happened here. Petitioners' titles have not been reclassified to a higher grade or salary. Indeed, the Division explicitly found that the tier III hearing duties at issue did not constitute out-of-*grade* work (i.e., a de facto promotion without competitive examination); specifically, the Division concluded that the level of compensation appropriate for performance of these duties was equivalent to job titles allocated at salary grade 18, whereas petitioners' civil service titles were allocated to salary grade 18 or above. As a result, the revised classification standards in this case do not implicate the constitutional and statutory limits on reclassification, which are grounded in the New York Constitution's requirement of merit selection for civil service positions.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Order affirmed, with costs.